Margaret WEBB *v.* HCA HEALTH SERVICES OF MIDWEST, INC. d/b/a Doctors Hospital and Nicholas W. Riegler

89-128                               780 S.W.2d 571

Supreme Court of Arkansas
Opinion delivered December 11, 1989

Perroni, Rauls & Looney, P.A., by: Rita S. Looney, for appellant.

Ford & Harrison, by: E. Scott Smith and Patricia G. Griffith; and Huckaby, Munson, Rowlett & Tilley, by: Mike Huckaby and Timothy L. Boone, for appellee HCA Health Services of Midwest, Inc.

Friday, Eldredge & Clark, by: C. Tab Turner, for appellee Dr. Nicholas Riegler.

TOM GLAZE, Justice. Appellant filed a complaint alleging a cause of action for intentional infliction of emotional distress, commonly referred to as tort of outrage, against HCA Health Services (HCA) and Dr. Riegler. HCA does business as Doctors Hospital. The appellant also filed a cause of action against HCA for wrongful discharge. HCA and Riegler answered denying appellant's claims and Riegler moved to dismiss the claim against him based upon the statute of limitations. Dr. Riegler and HCA subsequently filed motions for summary judgment which the trial court granted in their favor on both the tort of outrage and wrongful discharge claims. Appellant appeals from the trial court's granting of summary judgment and Dr. Riegler cross-appeals from the trial court's denial of his motion to dismiss. We affirm the lower court decision denying appellant's tort of outrage claims, but reverse and remand the wrongful discharge claim

against HCA.

■ Because this appeal is from the trial court's granting of summary judgment, our review is limited and focuses on the pleadings, deposition testimony and other documents filed by the parties in support of their respective arguments. From that record, the following relevant facts and events are disclosed. HCA entered into a Memorandum of Understanding with the Arkansas Foundation of Medical Care (AFMC) pursuant to 42 U.S.C. § 1395cc(a)(1)(F), which requires providers of health services to maintain an agreement with a professional standards or quality control organization that addresses utilization and quality control, including the appropriateness of admissions. In this connection, HCA employed appellant as a utilization review coordinator, and in that capacity, appellant reviewed the charts of Medicare and Medicaid patients to determine if their admissions and lengths of stay complied with criteria set out by AFMC. This review process is a part of a federal government program dealing with the cost containment of services. If, in appellant's opinion, the admissions or stays did not comply with criteria, she reported that fact to the designated physician advisor who assessed whether additional diagnoses should be made or the underlying charting improved so as to certify additional hospital days for the patient. To meet its obligations under the federal program, AFMC conducted independent audits of patient charts.

Dr. Riegler made no secret of the fact he disliked this utilization review procedure. He voiced criticism that his charts were out for review when he made hospital rounds and complained to Ms. Chandler, appellant's supervisor. Apparently, Dr. Riegler had been placed on 100 % review so every chart of all his patients had to be reviewed. Ms. Chandler instructed appellant to avoid Dr. Riegler and to review his charts retroactively rather than reviewing the charts of patients upon their admissions and periodically thereafter.

In late December 1986 or early January 1987, appellant had problems when reviewing two of Dr. Riegler's patient charts, and in discussing the matter with Ms. Chandler, appellant claims Chandler asked her to submit false information regarding these two Medicaid patients' charts. Appellant refused, claiming the number of days the two patients spent in the hospital did not meet

the AFMC criteria. Chandler eventually certified the days and told appellant to place the certification documents with the patients' charts, which appellant did.

On January 13, 1987, the appellant was reviewing charts when Dr. Riegler made his rounds, and upon seeing appellant, Riegler went to Chandler to complain. Appellant was called to Chandler's office and informed of Dr. Riegler's complaints. Appellant was later terminated on January 22, 1987.

Appellant filed suit in March 1988, and in her count against Dr. Riegler alleged that he had made derogatory comments about her in the presence of others, had made unwarranted complaints to her supervisors, caused severe difficulty in her performing her duties and encouraged her supervisors to terminate her. In her deposition, however, appellant conceded that (1) she did not know if Dr. Riegler took part in or forced the hospital's decision to fire her, (2) Dr. Riegler did not make derogatory comments directly to her but told others within hearing that utilization review was "stinky," and (3) in general, Dr. Riegler had a problem with the utilization review process. Appellant further offered evidence that Dr. Riegler had told appellant (and a co-worker) not to touch his charts, that Riegler had threatened to sue everybody connected with the review procedure and that he was verbally abusive to the utilization review coordinators, which included appellant.

Even when viewing the foregoing evidence most favorably to appellant, as we are required to do, it simply fails to support a claim for the tort of outrage. In *Ingram* v. *Pirelli-Cable Corp.*, 295 Ark. 154, 747 S.W.2d 103 (1988), we stated that the type conduct that meets the standard of an outrage cause of action must necessarily be decided on a case-by-case basis. We further noted that this court had taken a somewhat strict approach to this new tort or cause of action. *Id.*; *Sterling* v. *Upjohn Health Servs.*, 299 Ark. 278, 772 S.W.2d 329 (1989). As established in *M.B.M. Co.* v. *Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980), in order to sustain a claim for outrage, conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. We hold that standard was not met by the appellant in her outrage claim

here against Dr. Riegler.

■ We also find appellant's record insufficient concerning her outrage claim against HCA. In addition to her allegations concerning Chandler asking her to falsify records, appellant claimed that HCA misrepresented appellant's cause of her termination when appellant applied for unemployment benefits. HCA claimed that appellant was discharged for not maintaining positive physician relationships and that she was insubordinate on January 13, 1988, in disobeying her supervisor's directions.[1]

Appellant, in her deposition, stated that, in terms of Medicaid reimbursement to the hospital, she did not know if it mattered what she certified as a result of review of patient charts, and she further offered that she did not know if Chandler was trying to defraud the government. When asked why she thought the incident between her and Chandler concerning Dr. Riegler's charts had anything to do with her discharge, she replied that Chandler seemed angry with appellant and it was the only time appellant had not done what she was asked to do. Finally, appellant described her encounter with Chandler by saying she refused Chandler's instructions to certify certain patient in-house (hospital) days and shoved the document (abstract) back to Chandler, who completed and certified the days instead.

■ Although we hold appellant's allegations and evidence are insufficient to show a tort of outrage claim, we do believe, when viewing the evidence in her favor, a fact issue exists regarding her wrongful discharge cause of action against HCA. In *Sterling Drug, Inc.* v. *Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988), we adopted the rule that if an employee is discharged for exercising a statutory right, or for performing a duty required by law or the reasons for the discharge was in violation of some other well established public policy, we would recognize the employee's wrongful discharge claim as an exception to the employment at will doctrine.

---

[1] Appellant's application for benefits had "insubordination" as the reason for termination, but she denied she provided that reason. The Arkansas Appeal Tribunal found appellant did not defy a direct order, was not insubordinate and awarded her benefits.

In reviewing motions for summary judgment, the burden is one the moving party to demonstrate that there is no genuine issue of fact for trial. *Prater* v. *St. Paul Insurance Co.*, 293 Ark. 547, 739 S.W.2d 676 (1987). Summary judgment is not proper where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable men might differ. *Id.* In the present case, HCA states that the appellant was terminated for reasons unrelated to any alleged violation of public policy. Further, HCA argues, or at least implies, that the appellant did not know how to evaluate or review the charts she discussed with Chandler, and besides it did not matter how she evaluated the AFMC criteria and the two disputed charts because her actions did not bear on whether Medicaid reimbursements were made. Such arguments ignore the fact that the entire reason for appellant's employment with HCA arose out of federal statutory and regulatory requirements that are designed to contain medical costs. AFMC criteria are employed to further that purpose, and utilization coordinators like the appellant, are, at least in some part, provided to implement this federal program. Appellant alleged and testified that she was told to falsify records which she is required to complete and certify. HCA, on the other hand, summarizes its position by saying appellant was not requested to falsify anything but she simply did not know how to review the two disputed charts. Undoubtedly an employer's request to falsify a business record used in achieving the purposes of a program required by law of medical providers violates public policy.

It may well be that when further evidence is presented at trial, HCA may sustain its position that appellant altogether failed in performing her duties which caused her termination and no falsification existed or was intended. The state of the record on motion for summary judgment does not resolve that fact issue, and therefore, we reverse and remand this cause for trial on the wrongful discharge issue.

Because we affirm the trial court's decision dismissing the tort of outrage claims against HCA and Dr. Riegler, we need not address Riegler's cross-appeal. For the reasons stated above, we affirm in part and reverse and remand in part.

620

HICKMAN, J., would affirm on all points.