**Martha S. MANSFIELD, Plaintiff,**

v.

**AMERICAN TELEPHONE AND TELEGRAPH CORPORATION and Robert Harper, Defendants.**

**Civ. No. 90–2045.**

United States District Court, W.D. Arkansas, Fort Smith Division.

Oct. 11, 1990.

Robert E. Yoes, Yoes Law Firm, Fort Smith, Ark., for plaintiff.

Kathlyn Graves, Wright, Lindsey & Jennings, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

**MORRIS SHEPPARD ARNOLD,** District Judge.

In June, 1989, Martha Mansfield was fired from her job as a national accounts manager for AT & T. She sues her former supervisor and AT & T, alleging wrongful discharge, breach of contract, breach of covenant of good faith and fair dealing, outrage, slander, and discrimination on account of age, gender, and political views.

The defendants now move for summary judgment as to the claims for wrongful discharge, breach of contract, breach of covenant of good faith and fair dealing, and outrage. The motion will be granted as to the claims for wrongful discharge and breach of covenant of good faith and fair dealing and denied as to all other issues raised.

### I.

The defendants first argue that Ms. Mansfield was an employee at will and therefore, as a matter of law, has no claim for wrongful discharge unless her firing was in violation of a well established public policy of the state. *See, e.g., Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 249, 743 S.W.2d 380 (1988). Public policies that have been recognized in Arkansas cases as sheltering an employee at will include the encouragement of citizen reporting of violations of state or federal law, *id.* at 250, 743 S.W.2d 380, the protection of the exercise of a statutory right, *Webb v. HCA Health Services,* 300 Ark. 613, 618, 780 S.W.2d 571 (1989), the protection of the performance of a duty required by law, *id.,* and the protection of the refusal to perform an illegal act, *id.* at 619, 780 S.W.2d 571. *See also Sterling Drug,* 294 Ark. at 245, 743 S.W.2d 380, and *Scholtes v. Signal Delivery Service, Inc.,* 548 F.Supp. 487, 494 (W.D.Ark.1982).

Although Ms. Mansfield's complaint alludes to her refusal to "conduct her job duties in a manner contrary to ... public policy" (*see* complaint, paras. 10, 11), the complaint is not specific as to details. According to her response to the defendants' motion, however, that allusion is to Ms. Mansfield's refusal to cooperate with AT & T in its alleged commission of a felony, *i.e.,* the hiring through transfer of Beverly Burns as a political favor to B.G. Hendrix,

a state legislator, and Ms. Mansfield's continued opposition to the employment of Ms. Burns. *See* pp. 2, 7, plaintiff's brief in response to defendants' motion; *see also* Mansfield Tr. 39–43, 165–68, 173–75, 198–99. The defendants apparently acknowledge that those allegations by Ms. Mansfield are the basis for her wrongful discharge claim. *See* pp. 5–6, defendants' brief on motion for summary judgment. They argue, nonetheless, that such conduct does not fall within any of the categories recognized by the Arkansas courts as protecting an at-will employee. The court agrees.

Ms. Mansfield cites as authority for her allegations of commission of a felony the provision of the state constitution defining as a crime the direct or indirect offer, gift, or promise of anything of value to any state legislator in order to influence that legislator's action in the performance of public or official duty. *See* Ark. Const. art. V, § 35. She contends that AT & T gave Ms. Burns a position in order to influence Mr. Hendrix's actions relative to AT & T in the legislature. *See* Mansfield Tr. 39–41, 175, 198–99.

It is not clear to the court what Ms. Mansfield means when she states that she "refused to cooperate" (*see* p. 2, plaintiff's brief in response to defendants' motion) in the hiring and continued employment of Ms. Burns. It is obvious that Ms. Mansfield opposed the idea. *See* Mansfield Tr. 41–42, 165–67, 173–74. It also appears, however, that the actual decision to hire Ms. Burns was made not by Ms. Mansfield but by her supervisors and other corporate officials, specifically, her immediate superior, James Upchurch; an area vice-president, a Mr. Keith; "someone from Atlanta"; and Ed Moore, an employee in the AT & T regulatory services department. *See* Mansfield Tr. 39–41. Indeed, she states that she related to Mr. Moore that she had

no authority in that regard and that he would need to talk with her supervisor to effect that hiring, *see* Mansfield Tr. 40–41, and she describes what occurred as her having been "forced to take [Ms. Burns] there," *see* Mansfield Tr. 42; *see also* Mansfield Tr. 38, 165, 175, 199. It also appears that Ms. Mansfield was not even Ms. Burns's supervisor in the corporate hierarchy. *See* Mansfield Tr. 37, 166–68, 199.

Ms. Mansfield does not allege that her firing was in retaliation for reporting to some law enforcement agency this action on AT & T's part, *see Sterling Drug*, 294 Ark. at 250, 743 S.W.2d 380, or for herself refusing to hire Ms. Burns, *see Webb*, 300 Ark. at 619, 780 S.W.2d 571. Rather, Ms. Mansfield alleges that her firing was in retaliation for her repeatedly stated opposition to a decision made by others. *See* Mansfield Tr. 165–66, 174. Under these particular circumstances, this court does not believe that the Arkansas courts would find Ms. Mansfield's firing to have been in violation of a well established public policy of the state.[1] The defendants' motion for summary judgment as to Ms. Mansfield's wrongful discharge claim is therefore granted.[2]

## II.

The defendants next argue that no contract of employment existed between AT & T and Ms. Mansfield and therefore that she has no claim for breach of contract. The court agrees in part and disagrees in part.

■ Ms. Mansfield concedes that no written contract of employment exists. *See* Mansfield Tr. 164. She offers two arguments to support her breach-of-contract claim, however—first, that representatives of AT & T made express oral promises of continued employment to her, and,

---

1. Ms. Mansfield advances as a separate argument the idea that the Arkansas courts would adopt detrimental reliance as a basis for a public-policy protection against firing of at-will employees. However, she cites no Arkansas cases suggesting even obliquely such an inclination, and this court finds that lack of authority to be dispositive on that point.

2. In so ruling, the court makes no finding as to whether Ms. Mansfield was indeed an employee at will. The court merely holds that if she was an employee at will, her discharge for the reasons she alleges does not violate a well established public policy of the state.

second, that the defendants are estopped to deny a contract of employment because their conduct led her to rely to her detriment on the prospect of continued employment. The court turns first to the question of a contract of employment based on oral promises.

In the employment context, the Arkansas courts have consistently refused to declare the existence of a contract for continued employment in the absence of an explicit representation that an employee will not be discharged except for cause. *See, e.g., Gladden v. Arkansas Children's Hospital,* 292 Ark. 130, 135–36, 728 S.W.2d 501 (1987); *see also Sterling Drug,* 294 Ark. at 245, 743 S.W.2d 380. An "implied provision against the right to discharge is not enough." *Gladden,* 292 Ark. at 136, 728 S.W.2d 501; *see also Harris v. Arkansas Book Co.,* 287 Ark. 353, 357, 700 S.W.2d 41 (1985).

Ms. Mansfield testifies that promises "have always been made by [her] supervisors ... [t]hat as long as you do your job and make the sales, and meet your quota, you will have employment here." *See* Mansfield Tr. 165; *see also* Mansfield Tr. 169, 173. This is the only evidence presented relating to alleged oral promises referenced by Ms. Mansfield or found by the court.

These representations, taken as true and even most generously interpreted, cannot possibly be construed as anything more than an implied promise not to fire Ms. Mansfield except for cause. That being the case, the court holds that no contract of employment was created by virtue of the assurances of the defendants relating to the certainty of future employment as long as Ms. Mansfield continued to do her job satisfactorily.

■ The court must, then, address a more troublesome issue—whether Ms. Mansfield was induced by the statements of the defendants to rely to her detriment on continued employment to such an extent that the defendants are estopped to deny a contract of employment. *See, e.g., Scholtes,* 548 F.Supp. at 492; *see also Re-statement (Second) of Contracts* § 90(1) comment b (1981).

Ms. Mansfield testifies that in reliance upon her supervisors' assurances of continued employment, she moved from city to city and declined several invitations to work at other corporations. *See* Mansfield Tr. 11, 177–78. Such claims have been cited by other courts applying Arkansas law to justify a denial of summary judgment in a breach-of-contract suit involving an alleged employment agreement. *See, e.g., Scholtes,* 548 F.Supp. at 492, 496–97. This court therefore denies the defendants' motion for summary judgment as to Ms. Mansfield's claim for breach of contract.

### III.

■ The defendants argue in passing that Ms. Mansfield may not assert a claim for breach of covenant of good faith and fair dealing. Ms. Mansfield has not responded to this contention. The court agrees with the defendants.

It is true that in *Scholtes,* 548 F.Supp. at 494, the court was "convinced that Arkansas law recognizes ... a term [requiring good faith and fair dealing in decisions to fire] implied in *fact* [in employment contracts], where, although omitted from the agreement, such is the intention of the parties as inferred from their words and conduct" (emphasis in original). It is also true that in *Jackson v. Kinark,* 282 Ark. 548, 550, 669 S.W.2d 898 (1984), the Arkansas Supreme Court alluded to the ways in which other states had "soften[ed] the harshness of the common-law rule [that employment contracts for an indefinite term amount to employment at will,] either by finding an express or implied agreement for a specified period of employment or by imposing on the employer a duty not to discharge the employee arbitrarily or in bad faith."

Given, however, the Arkansas Supreme Court's later discussion of *Jackson* in *Gladden,* 292 Ark. at 136, 728 S.W.2d 501, and the explicit statement that "an implied provision against the right to discharge is not enough," *id.,* this court does not believe that the Arkansas courts would recognize

as actionable a claim for breach of covenant of good faith and fair dealing. This court therefore grants the defendants' motion for summary judgment as to that claim.

## IV.

█ Finally, the defendants argue that Ms. Mansfield has failed to produce sufficient evidence to create a genuine issue of material fact as to her claim for outrage. The court disagrees.

To establish such a claim, Ms. Mansfield must present evidence of "conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *See* AMI Civil 3d, 404. The emotional distress suffered as a result "must be reasonable and justified under the circumstances and must be so severe that no reasonable person could be expected to endure it." *Id.*

Judgments for outrage have been upheld, grants of summary judgment to a defendant reversed, and dismissals for failure to state a claim reversed in Arkansas cases where an employee alleged that she was fired because she would not agree to her supervisor's demands for sexual favors and that her employer then represented in relation to her unemployment compensation claim that she had been fired for misconduct, *see Lucas v. Brown and Root, Inc.*, 736 F.2d 1202, 1206–07 (8th Cir.1984); where allegations were made that an employee with an outstanding record was intentionally dismissed on account of her age, *see Smith v. Southern Starr of Arkansas, Inc.*, 700 F.Supp. 1026, 1027–28 (E.D.Ark.1988); where, over a period of two years, the plaintiff was followed by the defendant and people hired by him, the defendant made repeated unwarranted complaints about how the plaintiff was doing his job, and the defendant made numerous threats to get the plaintiff fired, *see Hess v. Treece*, 286 Ark. 434, 440, 693 S.W.2d 792 (1985), *cert. denied*, 475 U.S. 1036, 106 S.Ct. 1245, 89 L.Ed.2d 354 (1986); where an employee being questioned about alleged thefts from his employer was repeatedly denied the opportunity to take tranquilizing medication during the questioning even though he was highly agitated at the time, *see Tandy Corp. v. Bone*, 283 Ark. 399, 407–08, 678 S.W.2d 312 (1984); where a construction crew unnecessarily drove heavy equipment over family graves, exposed the burial vaults within, and then told distressed family members not to visit the sites if these events were so upsetting, *see Growth Properties I v. Cannon*, 282 Ark. 472, 475–76, 669 S.W.2d 447 (1984); and where evidence was presented that a fired employee was given reasons for her termination inconsistent with the circumstances and, even after passing a polygraph test, was denied her back pay until the state labor department intervened, *see MBM Company, Inc. v. Counce*, 268 Ark. 269, 271–72, 281, 596 S.W.2d 681 (1980).

Judgments for outrage have been reversed, directed verdicts or summary judgment granted to a defendant, and complaints dismissed on outrage claims in Arkansas cases where evidence was presented that an employee was refused a promotion, denied raises, and given poor performance evaluations in an effort to pressure him to resign after he confronted his employer about alleged kickback schemes, *see Puckett v. Cook*, 864 F.2d 619, 620, 622 (8th Cir.1989); where a religious sect persuaded one of its members to repudiate his family, *see Orlando v. Alamo*, 646 F.2d 1288, 1289–90 (8th Cir.1981); where an insurance company disputed the plaintiff's interpretation of policy language and refused to pay a claim, *see Glenn v. Farmers and Merchants Insurance Company*, 649 F.Supp. 1447, 1448–50 (W.D.Ark.1986); where the plaintiff stopped making payments on a camper trailer that had developed multiple problems, the seller secured a warrant for the plaintiff's arrest after having been unable to locate him, and the plaintiff was subsequently arrested and held for two hours until he posted bond, *see Cordes v. Outdoor Living Center, Inc.*, 301 Ark. 26, 29–30, 34, 781 S.W.2d 31 (1989); where an employer was verbally abusive to the plaintiff and had made derogatory comments about a review process

of the employer's work in which the plaintiff was involved, *see Webb*, 300 Ark. at 617–18, 780 S.W.2d 571; where an employer falsely told a plaintiff's co-workers that the plaintiff was always drunk, falsely accused the plaintiff of lying on his job application, deliberately delayed processing the expense vouchers of the plaintiff and his subordinates, asked the plaintiff's subordinates to report on the plaintiff's movements, and cursed the plaintiff violently in front of others, *see Sterling v. Upjohn Healthcare Services, Inc.*, 299 Ark. 278, 279–80, 772 S.W.2d 329 (1989); where a bank refused to honor a certificate of deposit that was jointly in the plaintiff's and his mother's name, claiming that the certificate of deposit had to be applied toward interest on a loan balance due from the plaintiff's mother, *see Deason v. Farmers and Merchants Bank*, 299 Ark. 167, 168–70, 173, 771 S.W.2d 749 (1989); where an employer asked a plaintiff employee to take a second polygraph test but canceled it upon learning that the plaintiff's illness had been aggravated by the first polygraph test, *see Mechanics Lumber Co. v. Smith*, 296 Ark. 285, 287–89, 752 S.W.2d 763 (1988); where an employer established policies requiring a plaintiff department manager to track down individual employees personally rather than by phone to make job assignments, transferred some of the plaintiff's subordinates to another department, instructed the plaintiff to attend meetings to which no one else came, ordered the plaintiff to stay all night if necessary to fix a machine, directed the plaintiff to deliver personally all switchboard messages to his subordinates, and asked the plaintiff to sign a job description for a position lower than that to which he had earlier been promoted, *see Ingram v. Pirelli Cable Corp.*, 295 Ark. 154, 156–57, 747 S.W.2d 103 (1988); where, over a period of 18 months, and knowing that the plaintiff was under emotional stress due to a divorce, an employer reprimanded the plaintiff for acts he had not committed, denied the plaintiff the award of some company stock he had won in a sales contest, and repeatedly criticized the plaintiff's job performance in relation to specified tasks assigned to him through a detailed letter designed to pressure him to resign, *see Sterling Drug*, 294 Ark. at 243–44, 772 S.W.2d 329; and where an employer who had agreed to a one-year contract abruptly and angrily fired the plaintiff after three months, accusing him of having wasted considerable time, *see Givens v. Hixson*, 275 Ark. 370, 371–72, 631 S.W.2d 263 (1982); *see also Tandy Corp.*, 283 Ark. at 407, 678 S.W.2d 312 (questioning at half-hour intervals for one day and request for polygraph test during security investigation of theft not outrageous).

Ms. Mansfield alleges that during six hours of questioning, without notice, by AT & T representatives about an alleged conflict of interest, unauthorized use of company property, and submission of false expense vouchers, she was not given a chance to defend herself, was repeatedly laughed at and accused of lying whenever she tried to speak, was not permitted to smoke even though she told the AT & T representatives that she was a heavy smoker, was not permitted to eat, was implicitly accused of having used sexual favors to get customers' accounts, was implicitly accused of having a lesbian relationship with a co-worker, was subjected to questioning while one of the AT & T officials had unzipped pants, and was not permitted to leave until she signed a statement; that the reasons given for the interrogation were pretextual; that after she was fired, AT & T refused to pay various benefits due her; and that AT & T representatives suggested to others that she might be having affairs with customers or a lesbian relationship with a co-worker. *See* Mansfield Tr. 47–48, 52–56, 66, 73–74, 107–08, 110, 138, 143–44, 146–47, 149–50, 154, 161–63, 167, 182–83.

The court holds that Ms. Mansfield's testimony is sufficient to create a genuine issue of material fact on her claim of outrage. *See* especially *Lucas*, 736 F.2d at 1206–07; *Tandy Corp.*, 283 Ark. at 407–08, 678 S.W.2d 312; and *MBM Company*, 268 Ark. at 271–72, 281, 596 S.W.2d 681.

## V.

For the reasons stated, the court grants the defendants' motion for summary judg-

ment as to the claims for wrongful discharge and breach of covenant of good faith and fair dealing and denies it as to all other issues raised.