Andrew MERTYRIS *v.* P.A.M. TRANSPORT, INC.

92-151 832 S.W.2d 823

Supreme Court of Arkansas
Opinion delivered June 29, 1992

*Rice & Ogles, P.A.*, by: *John Ogles*, for appellant.

*Richard L. Miller*, for appellee.

ROBERT L. BROWN, Justice. Appellant Andrew Mertyris appeals on the basis that the circuit court erred in granting summary judgment in favor of appellee P.A.M. Transport, Inc. on his claims of implied contract and tort of outrage. His appeal is without merit, and we affirm the judgment of the circuit court.

P.A.M. Transport, a trucking firm, hired Mertyris in November 1987 and gave him a Driver's Manual at that time. The manual stated, in part, under a heading entitled "Performance Standards": "This Driver's Manual is not to be construed as a guarantee of employment for any specific period of time or any specific type of work. All assignments and continued employment will depend upon your satisfactory performance and the company's determination of the needs for your service." No written employment contract was entered into between P.A.M. Transport and Mertyris, and the record evidences no document which specified the term of employment.

On November 28, 1988, Mertyris was involved in a traffic accident in Holbrook, Arizona, which resulted in the death of a State Highway Department worker. He claimed at the time that the truck was defective and suddenly pulled to the right, causing the death. Mertyris was arrested, charged with manslaughter, and jailed. After a week in jail, his brother posted bond for him. Two weeks later, he returned to Arkansas. Following his return, he contacted a psychiatrist, Dr. Wayne Winkle, on the advice of P.A.M. Transport's Employee Benefits Officer, Kathy Rogers, for problems he was having with nervousness and depression. Dr. Winkle found that Mertyris had symptoms of depression, guilt feelings, and sleeplessness, all due to the accident. He concluded that Mertyris was obsessed with the accident and was unable to work because of these symptoms.

Mertyris later filed a claim with the Workers' Compensation Commission for injury to his mental health caused by the accident. He described his mental health problems in his claim as including feelings of guilt and depression.

P.A.M. Transport suspended Mertyris after the accident on November 28, 1988. It later rehired him on May 25, 1989, will full benefits and seniority after he was acquitted of the manslaughter charge that same month. Mertyris suffered a heart attack on July 18, 1989, and on August 12, 1989, he had a heart transplant operation. He has been disabled since that time.

Mertyris filed his complaint against P.A.M. Transport on July 29, 1990, and asserted claims for implied contract, tort of outrage, and wrongful discharge. P.A.M. Transport moved for summary judgment on all three claims, and on November 13, 1991, the circuit court filed its letter opinion granting summary judgment to the appellee. Judgment was entered thereafter.

For his first point, Mertyris contends that the Driver's Manual constituted an implied contract with P.A.M. Transport. Mertyris· argues specifically that the manual set out seven violations that would result in automatic termination of any driver regardless of length of service. Violations leading to automatic termination included use of alcohol and drugs, theft, failure to report an accident immediately, and the like. Criminal charges such as manslaughter were not included in the automatic termination provision.

The manual list for automatic termination was meant to be exclusive, according to Mertyris, and because of this list, his employer could dismiss him for no other reason. P.A.M. Transport counters that Mertyris was an at-will employee, whose employment could be terminated at any time by either party, and that the manual in no wise could be construed as a contract. The appellee emphasizes the point that the manual expressly states that it does not constitute a "guarantee of employment." The question before us, then, is whether the list of prohibited conduct was intended by implication to be exhaustive and exclusive of any other cause for discharge.

We recently reaffirmed the employment-at-will doctrine and noted certain exceptions to it "where there is an agreement that the employment is for a specified time, in which case firing may be only for cause, or where an employer's employment manual contains an express provision stating that the employee will only be dismissed for cause and that provision is relied on by the employee." *Crain Industries, Inc.* v. *Cass*, 305 Ark. 566, 571, 810

S.W.2d 910, 913 (1991). We have further recognized a limited public policy exception to the at-will doctrine and have held "that an at-will employee has a cause of action for wrongful discharge if he or she is fired in violation of a well-established public policy of the state." *Sterling Drug, Inc.* v. *Oxford*, 294 Ark. 239, 249, 743 S.W.2d 380, 385 (1988).

The *Crain* case added still another exception. There, the circuit court presented the jury with the issue of whether a statement in an employment handbook that layoffs would be according to seniority amounted to an enforceable promise by the employer. The jury found that it did. We affirmed, concluding that the circuit court did not err in presenting the issue to the jury.

The issue of whether a list of violations leading to termination could be interpreted as exclusive of all other causes for dismissal was presented squarely to this court in two consolidated cases. *See Gladden* v. *Arkansas Children's Hospital*, 292 Ark. 130, 728 S.W.2d 501 (1987). In the first case, we affirmed a directed verdict in favor of the employer on the basis that the personnel manual involved simply listed the conduct which could result in termination "with no implications that those infractions alone constitute cause for discharge." 292 Ark. at 134, 728 S.W.2d at 503-504. Nor did we find a policy expressed in either manual that the respective employees would not be discharged except for cause.

That is exactly the situation that we have in the case before us. The P.A.M. Transport manual lists certain conduct that will result in termination, but nothing in the manual suggests that he list is intended to be exhaustive. Indeed, it would not only be unreasonable but absurd to interpret the manual as implicitly foreclosing termination for criminal acts and wrongful conduct beyond the seven violations listed in the manual. We note with respect to this point that Mertyris himself admitted at deposition that the manual did not say that these were the only reasons P.A.M. Transport could fire someone.

Were we to adopt Mertyris's argument on this point, we would be forced to overrule clear and sound precedent in the form of *Gladden*, which we are not disposed to do. In sum, we refuse to hold that a list of conduct in the manual leading to automatic termination constituted an implied promise by the employer not

to dismiss Mertyris for any other criminal conduct, wrongful act, or other legitimate reason. The manual contained no express provision that an employee would be dismissed only for cause, and the case falls within no other exception to the at-will doctrine. We affirm the circuit court's decision on this point.

Mertyris next asserts that the court erred in granting summary judgment on his claim of outrage. The precise allegation in his complaint was that P.A.M. Transport "undertook a systematic and malicious campaign of intentionally inflicting upon the plaintiff emotional distress by dismissing plaintiff." He presents three additional examples to support his allegation of outrageous conduct; 1) P.A.M. Transport should have posted bail for him when he was in jail in Arizona; 2) the employer should have inspected the truck for defects in the steering box; 3) the lawyer for the employer tried to get him to change his story about the accident.

A person is subject to liability for outrage if he or she willfully or wantonly causes severe emotional distress to another by extreme and outrageous conduct. *Smith* v. *American Greeting Corp*, 304 Ark. 596, 804 S.W.2d 683 (1991); *Sterling Drug, Inc.* v. *Oxford, supra; Ingram* v. *Pirelli Cable Corp*, 295 Ark. 154, 747 S.W.2d 103 (1988); *M.B.M. Co., Inc.* v. *Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980). In *Counce*, we stated: "By extreme and outrageous conduct, we mean conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." 268 Ark. at 280, 596 S.W2d at 687.

We have considered the issue of whether discharge of an at-will employee alone can support a claim for outrage:

> Because of the employer's right to discharge an at-will employee, a claim of outrage by an at-will employee cannot be predicated upon the fact of discharge alone. However, the manner in which the discharge is accomplished or the circumstances under which it occurs may render the employer liable.

*Harris* v. *Arkansas Book Co.*, 287 Ark. 353, 356, 700 S.W.2d 41, 43 (1985), quoted with approval, *Smith* v. *American Greetings*

*Corp., supra.*

 Here, Mertyris was suspended for about six months but rehired without loss of benefits or seniority. Affidavits from Kim Tedder, the Dispatch Supervisor, and Kathy Rogers, Employee Benefits Manager, aver that Mertyris was an at-will employee and that this suspension was due to U. S. Department of Transportation regulations which forbid a person from driving a motor vehicle if the person suffers from a mental disorder that renders him unable to drive safely. 49 C.F.R. § 391.41(b)(9) (1991). Thus, a legitimate reason for the suspension existed due to the fatal accident and the appellant's consequent mental problems. And, again we note, Mertyris was rehired by the appellee.

 Accepting, as alleged, that P.A.M. Transport did not bail Mertyris out of jail or inspect the truck and that its attorney tried to get him to change his story, this conduct falls far short of the profound seriousness required for a successful outrage claim. We observed in *Ingram v. Pirelli Cable Corp., supra*, that liability in tort-of-outrage cases does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Yet, the conduct supporting Mertyris's claim falls more readily into the categories adduced in *Ingram* than in the category of behavior so extreme and atrocious as to be utterly intolerable in a civilized society. We decline to hold that the circuit court erred in finding his conduct to be insufficient for the tort of outrage.

Summary judgment was appropriate under the facts of this case, and we affirm.

Affirmed.