**Rick E. COATNEY, Plaintiff,**

v.

**ENTERPRISE RENT–A–CAR COMPANY, Defendant.**

No. 95–2087.

United States District Court,
W.D. Arkansas.
Fort Smith Division.

Aug. 21, 1995.

Gary W. Udouj, Warner & Smith, Fort Smith, AR, for plaintiff.

Russell A. Gunter, McGlinchey, Stafford, Cellini & Lang, Little Rock, AR, D. Michael Linihan, Thomas E. Berry, McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, MO, for defendant.

## ORDER

HENDREN, District Judge.

NOW on this 21 day of August, 1995, comes on for consideration defendant's Motion to Dismiss. Plaintiff has responded, and the Court, being well and sufficiently advised, finds as follows:

*Plaintiff's Allegations*

1. In his complaint, plaintiff asserts five (5) separate causes of action which he contends were triggered by his termination from employment by defendant. Plaintiff alleges he was employed by defendant for approximately two and a half years, and in August of 1994, in accordance with the employee handbook, he advised his immediate supervisor that he was establishing a relationship with one of his employees hired by plaintiff for the Fort Smith branch office. Plaintiff contends that his supervisor consoled him and, based upon their further conversation, plaintiff rea-

sonably believed that a personal relationship with a subordinate on a consensual basis, conducted after hours, was not uncommon and was acceptable.

2. It is further alleged that on November 28, 1994, Jack Talley, V. Pres. and General Manager of defendant, reviewed plaintiff's performance and congratulated plaintiff on his good work and good year, and informed plaintiff that he was on the path to promotion.

3. On December 1, 1994, plaintiff was suspended pending a corporate investigation and was terminated on December 3, 1994, for the alleged reason of "fraternization" in violation of company policy.

4. Plaintiff's causes of action are for: wrongful discharge; breach of contract; breach of implied covenant of good faith; defamation; and outrage.

5. *Motion to Dismiss*

In defendant's Motion to Dismiss, defendant contends that each of plaintiff's causes of action fails to state a claim upon which relief can be granted and seeks their dismissal pursuant to Fed.R.Civ.P. 12.

 In considering a Motion to Dismiss under Rule 12(b)(6), the allegations in the complaint must be construed in the light most favorable to the plaintiff. *Patterson v. Von Riesen*, 999 F.2d 1235 (8th Cir.1993), quoting from *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Patterson* at 1237, quoting from *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

(a) *First Cause of Action—Wrongful discharge*

Defendant contends plaintiff was an at-will employee and as such, plaintiff could be terminated for good cause, no cause, or even a morally wrong cause. Defendant states that the only judicially recognized exception to the general at-will law in Arkansas is when

there is an agreement that the employment is for a specified time or where an employer's employment manual contains an express provision stating that the employee will only be dismissed for cause and that provision is relied upon by the employee.

As stated by plaintiff, the Arkansas Supreme Court has recognized certain exceptions to the employee-at-will doctrine. In *Mertyris v. P.A.M. Transport, Inc.*, 310 Ark. 132, 832 S.W.2d 823 (1992), the Arkansas court discussed the doctrine:

> We recently reaffirmed the employment-at-will doctrine and noted certain exceptions to it "where there is an agreement that the employment is for a specified time, in which case firing may be only for cause, or where an employer's employment manual contains an express provision stating that the employee will only be dismissed for cause and that provision is relied on by the employee." *Crain Industries, Inc. v. Cass*, 305 Ark. 566, 571, 810 S.W.2d 910, 913 (1991). We have further recognized a limited public policy exception to the at-will doctrine and have held "that an at-will employee has a cause of action for wrongful discharge if he or she is fired in violation of a well-established public policy of the state." *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 249, 743 S.W.2d 380, 385 (1988).

> The *Crain* case added still another exception. There, the circuit court presented the jury with the issue of whether a statement in an employment handbook that layoffs would be according to seniority amounted to an enforceable promise by the employer. The jury found that it did. We affirmed, concluding that the circuit court did not err in presenting the issue to the jury.

*Id.*, 310 Ark. at 134–135, 832 S.W.2d at 825.

■ It is clear, therefore, that the recognized exceptions to the employee-at-will doctrine are 1) where there is an agreement that the employment is for a specified time, in which case firing may be only for cause; 2) where there is an express provision contained in an employment manual stating that the employee will only be dismissed for cause and such provision is relied on by the em-

ployee; 3) where an employee is fired in violation of a well-established public policy of the state; and 4) where a statement contained in an employment handbook amounts to an enforceable promise by the employer.

■ Plaintiff concedes he is not claiming wrongful discharge based upon the public policy exception, but is relying upon the handbook/personnel manual line of cases where relevant portions of the manual can be construed to constitute an express contract which prohibits arbitrary termination except for cause.

In the defendant's Personnel Policies and Benefits Summary, a copy of which is attached to the complaint, the following relevant provisions appear:

**Fraternization and Sexual Harassment Policy**

Supervisors and management employees at all levels *must* refrain from developing personal relationships with employees who report to them whether directly or indirectly. In the event such a relationship does develop, it must be immediately reported by the Supervisor or Manager to his or her superior. If the relationship is not reported on a timely basis, this failure is cause for demotion, transfer, resignation or discharge. If the personal relationship is reported on a timely basis, then appropriate action will be taken by the company to prevent problems listed above. At the very least, the supervisory relationship will end. . . .

**Employee Termination**

The service of employees whose work or conduct is unsatisfactory will be terminated, but generally only after a warning by their manager and after they have been given an opportunity to improve and meet the requirements of their position.

Since off-the-job conduct directly affects the reputation of Enterprise Rent-A-Car, we expect all employees to be law abiding citizens. Employees whose off-the-job conduct results in a felony conviction reflecting unfavorably on the company will be subject to termination of employment. An employee may be dismissed immediately without notice as determined by man-

**1208**

agement for causes such as, but not limited to, unsatisfactory driving record, insubordination, refusal to cooperate in a company investigation or follow proper instructions, repeated violation of regulations, flagrantly improper personal conduct, violations of the drug and alcohol policy, dishonesty or theft and habitual absence or tardiness.

In accordance with company policy, in the event of lost/stolen company property, a manager who fails to secure keys, checks, cash, office equipment or other company property, and fails to properly delegate this responsibility, will be held accountable for the loss. Disciplinary action may include reimbursement of the loss and/or other measures up to and including termination.

To facilitate an orderly transition in the case of an employee voluntarily leaving the company, the company normally requires two weeks notice. Failure to give written notice is a factor when considering eligibility for re-employment. Once notice has been given, the company reserves the right to select the date of departure.

**Employee Acknowledgement**

As an employee of Enterprise your employment and compensation can be terminated with or without cause, and with or without notice at any time, at the option of either the Company or yourself. No employee of Enterprise, other than a subsidiary General Manager or Corporate Officer, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing. Any effective binding agreement must be in writing and signed by both a subsidiary General Manager or Corporate Officer and the individual employee involved.

Neither the Personnel Policies and Benefits Summary of Enterprise, or policy statements nor the various applications for employment utilized by Enterprise are intended to constitute employment contracts, either express or implied, nor shall they serve as an independent basis for a contract of employment. Furthermore, none of the benefits or policies contained within the Enterprise Personnel Policies and Benefits Summary are intended by reason of their publication to confer any rights or privileges upon employees, or to entitle employees to remain employed by the company. Employees understand the Personnel Policies and Benefits Summary is presented for informational purposes only.

Individuals whose employment is governed by the terms of a collective bargaining agreement under which benefits were the subject of good faith negotiations will not be eligible to participate in the programs listed in this summary unless the contract expressly provides for such coverage.

Acceptance of, or continuation of, employment on or after the effective date of this booklet acknowledges your agreement to the terms of this Article and your acceptance of the Company policies and requirements as stated herein. Employee voluntarily agrees and understands that Enterprise has the absolute discretionary right to modify the above described policies and benefits from time to time and that the company will determine the most practical and efficient means to announce such changes to employees.

Plaintiff contends that the defendant's policy regarding Fraternization constitutes a contractual promise that if he reported a personal relationship on a timely basis, that some "appropriate action" would be taken such as ending the supervisory relationship. It is conversely argued by plaintiff that if he does not report the relationship "this failure is *cause* for demotion, transfer, resignation, or discharge." Plaintiff contends that by implication, if the employee did report the personnel relationship as required by the policy, the enumerated discipline including *discharge* would not apply.

Plaintiff also argues that the language contained in the policy relating to employee termination constitutes further promises made by defendant, such as: a) where the employer promises that termination will occur "generally, only after a warning by their manager and after they have been given an opportunity to improve and meet the requirements of their position": and b) that an employee may be dismissed immediately without notice for causes such as, but not

---

limited to certain violations not related in any way to fraternization.

In the Court's view, the above quoted provisions regarding Fraternization and Employee Termination could perhaps be construed as promises made by the employer regarding the method of treatment in cases involving fraternization and employee termination, thus triggering the exception to the at-will doctrine in this case pursuant to the holding in *Crain Industries, Inc. v. Cass,* 305 Ark. 566, 810 S.W.2d 910 (1991). However, it must be noted that this is not the only pertinent language to be considered. There is also a lengthy disclaimer at the end of the policy manual under the heading "Employee Acknowledgement," where the employer states that the personnel policy does not constitute an express or implied contract, and that an employee may be terminated with or without cause, and with or without notice. Accordingly, the question becomes whether such disclaimer is effective to nullify any promises the employer makes in the previous provisions.

Plaintiff argues that it is patently unjust to allow defendant to couch its handbook/personnel manual in mandatory terms and then ignore every policy as nonbinding if it works to its disadvantage. Plaintiff states that it would be ludicrous for plaintiff Coatney to argue that the prohibitions against insubordination, refusal to cooperate with a company investigation, violations of drug and alcohol policy, etc. were for "informational purposes only" and need not be followed, and that it should be equally ludicrous for defendant to make that same argument concerning its promises. Plaintiff cites *Small v. Springs Industries, Inc.,* 292 S.C. 481, 357 S.E.2d 452 (1987) in support of his position.

In *Crain,* the previously discussed Arkansas case, a disclaimer was also involved, but the Court did not have to reach the issue now before this Court, since in *Crain,* the disclaimer appeared in a handbook that was prepared and published after certain employees began their employment. There was evidence that those employees were not made aware of the change, and the Court concluded that if such a change is to be effective, it must be communicated to the employee. The Court reserved judgment on the question whether, and under what conditions an employer may effectively modify a handbook with notice to affected employees. Although not directly on point, the language in *Crain* nevertheless implies that if an employee is aware of the disclaimer, such disclaimer might be effective. The Court in *Crain* cited cases in which it has been held that similar disclaimers as that presented in *Crain* were effective. *See, e.g., Eldridge v. Evangelical Lutheran Good Samaritan Soc.,* 417 N.W.2d 797 (N.D.1987); *Castiglione v. Johns Hopkins Hosp.,* 69 Md.App. 325, 517 A.2d 786 (1986), *cert. denied,* 309 Md. 325, 523 A.2d 1013 (1986). Therefore, this Court will look to the two (2) cases cited by the Arkansas Supreme Court for guidance as to what the Arkansas court might do if presented with facts similar to those presented herein.

In *Eldridge,* plaintiff sued a former corporate employer and her immediate supervisor, claiming a breach of an employment contract. She contended that the Personnel Policy Handbook distributed by the Society was an employment contract which rebutted the presumption of at-will employment. She further contended that she was wrongfully terminated because the Society did not follow the progressive discipline procedures in its employee handbook. In the handbook involved in *Eldridge,* the following disclaimer appears:

### "A CLOSING STATEMENT

"This Handbook is being made available to all workers on the Good Samaritan team. Its purpose is to: (1) Provide understanding and direction for our personnel program; (2) Clarify action to be taken to minimize the possibility of unauthorized personnel action; a and (3) Provide a record to guide future policy and serve as a framework for the revisions that appear to be desirable on the basis of experience.

"The contents of this Handbook are presented for your information. While we fully intend to continue offering the benefits and policies as written, The Ev. Lutheran Good Samaritan Society reserves the right to change or revoke them, permanently or temporarily, if it is in the best

interest of the Society to do so. No policy, benefit, or procedure implies or may be construed to imply this Handbook to be an employment contract for any period of time. [Emphasis added.]

### "ACKNOWLEDGEMENT

"I have read the Personnel Policies Handbook and understand the material contained therein.

"I agree to all the conditions set forth in the Handbook.

"_____

Date

_____

Signature of Employee"

*Id.* at 800.

The Court in *Eldridge* concluded that the disclaimer contained in the Closing Statement operated to preserve the presumption of at-will employment and therefore the Society was not bound to follow the Progressive Discipline Procedures set forth in its employee handbook. *Id.*

In *Castiglione v. The Johns Hopkins Hospital,* 69 Md.App. 325, 517 A.2d 786 (1986), *cert. denied,* 309 Md. 325, 523 A.2d 1013 (1987) appellant brought an action for breach of an alleged employment contract, claiming that the failure of her employer to review with her the findings of the last evaluation constituted a violation of procedures set forth for performance appraisals in "The Johns Hopkins Hospital Employee Handbook." *Id.,* 69 Md.App. at 328–329, 517 A.2d at 787. The handbook contained an express disclaimer that any provisions of the policy manual constituted a contract. The trial court granted appellee's motion for summary judgment, ruling that because of the disclaimer language, the handbook did not constitute an employment contract. The appellate court affirmed. In distinguishing another Maryland case (Staggs), the court concluded:

> The disclaimer language in the policy manual quoted in appellee's pleadings does not indicate any intent to limit the discretion of the appellee to discharge only for cause, as was the case in Staggs. Moreover, other portions of the manual quoted in appellee's memorandum actually served

to reserve the rights of appellee "to direct and discipline our workforce ... and to take whatever action is necessary in our judgment to operate [the Defendant Hospital]." Finally, unlike the situation in Staggs, in this case the appellee expressly negated, in a clear and conspicuous manner, any contract based upon the handbook for a definite term and reserved the right to discharge its employees at any time. The provisions for review, when viewed in the larger context, were but "general policy statements" not amounting to an offer of employment for a definite term or requiring cause for dismissal.

> Other decisions finding in favor of discharged employees have generally involved reliance by employees on policy manuals or oral promises that limited the discretion of the employer to fire except for cause or that contained job security provisions and pre-dismissal reprimand procedures more detailed than in the case sub judice. (citations omitted).

> While courts of other states have recognized the Staggs—type exception to the "at will" doctrine, (citations omitted), the cases have also recognized an employer may avoid contractual liability by any terms which clearly and conspicuously disclaim contractual intent. (citations omitted)....

> The purpose of the Staggs exception to the at will doctrine is to protect the legitimate expectations of employees who have justifiably relied on manual provisions precluding job termination except for cause. (citation omitted). Justifiable reliance is precluded where, as in the case at hand, contractual intent has been expressly disclaimed.

> Appellant's final contention, that the disclaimer provision of the hospital manual should not be enforced because it is inequitable, is without merit. Appellant has cited no cases which would support such a contention. In the non-commercial context, courts are reluctant to strike provisions within agreements voluntarily entered into between the parties in the absence of fraud, mistake or oppression. 17 Am.Jur.2d Contracts s 192 (1964) and

cases cited therein. There were no contentions of fraud, mistake or oppression in this case.

*Id.* 69 Md.App. at 339–341, 517 A.2d at 793–794.

In the present case, it is not clear whether plaintiff was required to sign the manual when presented to him, as was the case in *Eldridge.* However, the Court does not find this to be crucial, since there is also no indication or allegation that the disclaimer was not contained in the manual when plaintiff was hired; that plaintiff had no knowledge of the disclaimer; or that said disclaimer is ambiguous or inconspicuous. Plaintiff does make reference to the disclaimer being "buried on the last page of a fifteen page policy manual." However, it does not necessarily follow from said allegation that the language of the disclaimer is unclear or necessarily inconspicuous. Relying on the language contained in *Crain,* as well as *Eldridge* and *Castiglione,* this Court believes that if the Arkansas Supreme Court considered the facts and circumstances in this case, it would hold that the handbook does not constitute an employment contract.

Since plaintiff's first cause of action for wrongful discharge is based upon the handbook/personnel manual line of cases where relevant portion of the manual can be construed to constitute an express contract which prohibits arbitrary termination except for cause, the Court finds, based upon the above legal authority, plaintiff's first cause of action for wrongful discharge fails to state a claim for which relief can be granted and should therefore be dismissed.

(b) *Second Cause of Action—Breach of Contract*

■ Plaintiff contends the policy concerning "fraternization" constitutes a contractual promise that if he reported a personal relationship on a timely basis, that some "appropriate action" would be taken such as ending the supervisory relationship. As stated earlier, it is also argued that Mr. Coatney is promised by the handbook that if he does not report the relationship "this failure is *cause* for demotion, transfer, resignation, or discharge" and that by implication, if he did

report the personnel relationship as required by the policy, the enumerated discipline including discharge would not apply. Plaintiff does not deny the existence of the disclaimer language contained in the handbook. Nor does he argue that it is inconspicuous or unclear. Based upon the disclaimer, under general contract principles, the Court finds plaintiff's cause of action for breach of contract fails to state a claim upon which relief can be granted and should be dismissed.

(c) *Third Cause of Action—Breach of the Implied Covenant of Good Faith*

■ With respect to plaintiff's third cause of action for breach of the implied covenant of good faith, plaintiff states that he is not asking this Court to recognize an "implied in law of good faith and fair dealing" term in the employment contract, but is asking the Court to recognize *implied in fact* good faith and fair dealing in the agreement between the parties, and relied upon *Scholtes v. Signal Delivery Service, Inc.,* 548 F.Supp. 487, 494 (W.D.Ark.1982) for support. In *Mansfield v. American Tel. & Tel. Corp.,* 747 F.Supp. 1329 (W.D.Ark.1990), the Court addressed the holding in *Scholtes:*

> It is true that in *Scholtes,* 548 F.Supp. at 494, the court was "convinced that Arkansas law recognizes ... a term [requiring good faith and fair dealing in decisions to fire] implied in *fact* [in employment contracts], where, although omitted from the agreement, such is the intention of the parties as inferred from their words and conduct" (emphasis in original). It is also true that in *Jackson v. Kinark,* 282 Ark. 548, 550, 669 S.W.2d 898 (1984), the Arkansas Supreme Court alluded to the ways in which other states had "soften[ed] the harshness of the common-law rule [that employment contracts for an indefinite term amount to employment at will,] either by finding an express or implied agreement for a specified period of employment or by imposing on the employer a duty not to discharge the employee arbitrarily or in bad faith."

Given, however, the Arkansas Supreme court's later discussion of *Jackson* in *Gladden,* 292 Ark. at 136, 728 S.W.2d 501, and

the explicit statement that "an implied provision against the right to discharge is not enough," *id.* this court does not believe that the Arkansas courts would recognize as actionable a claim for breach of covenant of good faith and fair dealing. This court therefore grants the defendants' motion for summary judgment as to that claim.

*Id.* at 1332–1333.

Based upon the holding in *Mansfield,* this Court finds plaintiff's third cause of action fails to state a claim upon which relief can be granted and should be dismissed.

### (d) *Fourth Cause of Action—Defamation*

■ In his fourth cause of action, plaintiff contends that defendant published and caused to be published materials and statements which were untrue and defamatory about plaintiff, including without limitation the following:

(a) That Plaintiff "took a vacation and just never returned";

(b) That Plaintiff committed a terminable offense by dating a fellow employee, even though it was after business hours.

Plaintiff also contends that he has been forced to repeat the charges to the unemployment agency, to prospective employers, fellow employees and friends, which self publication was humiliating and injurious, and that defendant, through its agents in the Fort Smith office, are defaming plaintiff's reputation and name by publishing to third parties that the plaintiff terminated his employment irresponsibly by taking a "vacation and just never returning".

Defendant contends that to the extent plaintiff seeks to recover for plaintiff's "self publication," no such claim has been recognized as a matter of law. Defendant further states that plaintiff does not identify in his complaint any abuse of a privilege or a communication to a non-privileged third party by defendant, or that defendant communicated allegedly defamatory statements to any third party.

Construing the complaint in the light most favorable to plaintiff, the Court finds that plaintiff has alleged sufficient facts to withstand a motion to dismiss and the motion will therefore be denied as to the defamation claim.

### (e) *Fifth Cause of Action—Outrage*

■ With respect to plaintiff's fifth cause of action for outrage, plaintiff contends that the conduct of defendant through its agents and employees was willful, malicious, oppressive, and constituted a fraud on plaintiff as well as other employees similarly situated by:

(1) advising plaintiff that he must follow the policy manual and then simultaneously relying on the disclaimer language "buried on the last page of a fifteen page policy manual";

(2) promising plaintiff that if he reported any personal relationships that were developing with other subordinate employees which he supervised, it would not be cause for disciplinary procedure, and then when convenient to defendant to dispose of plaintiff, to terminate him for fraternization without warning, notice, transfer, or any other disciplinary action available to defendant under the policy manual.

In *Mansfield,* the Court discussed at length the tort of outrage as it has been applied in employment cases, and this Court will not reiterate the lengthy discussion herein. However, the Court will quote the language in *Mansfield* where the Court referred to what it takes to establish such a claim:

> To establish such a claim [outrage], Ms. Mansfield must present evidence of "conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *See* AMI Civil 3d, 404. The emotional distress suffered as a result "must be reasonable and justified under the circumstances and must be so severe that no reasonable person could be expected to endure it." *Id.*

*Id.* at 1333.

Plaintiff refers to paragraph 26 of his complaint where he states that the manner in which he was terminated and the circumstances under which he was terminated was outrageous behavior and sufficient to support

a claim under outrage in Arkansas. Paragraph 26 of plaintiff's complaint is as follows:

26. That the conduct of the Defendant through its agents and employees was willful, malicious, oppressive, and constituted a fraud on the Plaintiff as well as other employees similarly situated in the following respects:

(a) By advising the Plaintiff on the one hand that he must follow the Policy Manual and that both parties would have certain rights and responsibilities set out in the company Policy Manual, the compliance with which would control and influence the Plaintiff's merit increases, transfers, retentions, and promotions. And on the other hand, simultaneously relying on exculpatory language buried on the last page of a fifteen page Policy Manual stating in effect, that the benefits and the policies contained in the manual are not intended to confer any rights or privileges on the employees or to entitle the employees to remain employed by the company;

(b) By promising the Plaintiff that if he reported any personal relationships that were developing with other subordinate employees, which he supervised, that it would not be cause for disciplinary procedure. And the, when it is convenient to the Defendant to dispose of the Plaintiff, to terminate him for fraternization without warning, notice, transfer, or any other disciplinary action available to the Defendant under the policy manual.

The Court finds, as a matter of law, that such allegations do not rise to the level required by the Arkansas cases involving the tort of outrage in the employment context. It appears to the Court that although plaintiff might be outraged as to what Arkansas law allows in terms of the interpretation of the handbook manual, such is not sufficient to state a claim for outrage against defendant. Defendant is not liable for doing that which it had the legal right to do. *M.B.M. Co, Inc. v. Counce*, 268 Ark. 269, 280, 596 S.W.2d 681, 688 (1980). Accordingly, the Court finds plaintiff has failed to state a claim upon which relief can be granted as to outrage and it should therefore be dismissed.

ACCORDINGLY, Based upon the foregoing, the Court hereby finds that Counts 1, 2, 3, and 5 are dismissed for failure to state claims upon which relief can be granted, and the motion is denied as to Count 4.

IT IS SO ORDERED.