Howard SMITH III *v.* AMERICAN GREETINGS CORPORATION, an Ohio Corporation

90-261 804 S.W.2d 683

Supreme Court of Arkansas
Opinion delivered February 25, 1991.

*W. Hunter Williams Jr.*, for appellant.

*Moore, Moore-Hart & Barton*, by *Tom A. Bennett* and *Janice Levin*, for appellee.

ROBERT H. DUDLEY, Justice. The plaintiff, Howard Smith III, was hired in 1980 by the defendant, American Greetings Corporation, as a materials handler at defendant's plant in Osceola. He was subsequently promoted to forklift driver and held that job until he was fired in 1989. After being fired, he filed a complaint in circuit court in which he alleged that he was wrongfully discharged and that the defendant was guilty of the tort of outrage. The defendant filed an ARCP Rule 12(b)(6) motion to dismiss for failure to state facts upon which relief can be granted. The trial court granted the motion. The plaintiff appeals. We affirm the ruling.

Arkansas has long adhered to the employment-at-will doctrine which provides that a contract of employment for an indefinite term is terminable at the will of either party. *Griffin* v. *Erickson*, 277 Ark. 433, 642 S.W.2d 308 (1982). Under this doctrine an at-will employee may be discharged for good cause, no cause, or even a morally wrong cause. J.T. Youngdahl, *The Erosion of the Employment-at-Will Doctrine in Arkansas*, 40 Ark. L. Rev. 545, 546 (1987). In *Lucas* v. *Brown & Root, Inc.*, 736 F.2d 1202 (8th Cir. 1984), the Eighth Circuit Court of Appeals assumed that, under Arkansas case law, every employment relationship, even one terminable at will, contains "an

implied covenant of good faith and fair dealing, which under limited circumstances may make discharge actionable." *Id.* at 1203. This covenant prohibits discharge for a reason which contravenes public policy. Public policy has been contravened "when the reason alleged to be the basis for a discharge is so repugnant to the general good as to deserve the label 'against public policy.' " *Id.* at 1204-05.

In *Sterling Drug, Inc.* v. *Oxford*, 294 Ark. 239, 743 S.W.2d 380, *reh'g denied*, 743 S.W.2d 579 (1988), we verified the Eighth Circuit's assumption about Arkansas law. In that case, we recognized an action for wrongful discharge when an employee is discharged in violation of the public policy of this state. In reaching our conclusion, we quoted from *Sholtes* v. *Signal Delivery Serv., Inc.*, 548 F. Supp. 487 (W.D. Ark. 1982) in which the federal district court concluded that:

> Arkansas law would recognize at least four exceptions to the at-will doctrine, excluding implied contracts and estoppel. These are: (1) cases in which the employee is discharged for refusing to violate a criminal statute; (2) cases in which the employee is discharged for exercising a statutory right; (3) cases in which the employee is discharged for complying with a statutory duty; and (4) cases in which employees are discharged in violation of the general public policy of the state.

*Id.* at 494.

The *Sterling Drug, Inc.* decision then noted cases acknowledging the public policy exception to employment-at-will where employees were discharged for refusing to violate a specific statute, for complying with a statutory duty, and for protesting their employer's or other's violation of state or federal law. After this survey of law in other jurisdictions, we held:

> [A]n employer should not have an absolute and unfettered right to terminate an employee for an act done for the good of the public. Therefore, we hold that an at-will employee has a cause of action for wrongful discharge if he or she is fired in violation of a well-established public policy of the state. This is a limited exception to the employment-at-will doctrine. It is not meant to protect merely private or

proprietary interests. *Wagner, supra.*

*Id.* at 249, 743 S.W.2d at 385 (1988).

The case cited at the end of the above quotation was decided by the Supreme Court of Arizona, *Wagner* v. *City of Globe*, 150 Ariz. 82, 722 P.2d 250 (1986). That case involved a policeman who had refused to conceal the illegal arrest and detention of a prisoner and was instrumental in having him brought before a magistrate. After characterizing the policeman's conduct as "whistleblowing" activity, the court concluded that such activity serves a public purpose and should be protected, so long as the employee's activity is not merely private or proprietary but seeks to further the public good.

 In considering a motion for a judgment on the pleadings for failure to state facts upon which relief can be granted, the facts alleged in the complaint must be treated as true and viewed in the light most favorable to the party seeking relief. *Battle* v. *Harris*, 298 Ark. 241, 766 S.W.2d 431 (1989).

 Here, plaintiff alleged that he had a dispute with his shift leader while at work, and after work he tried to discuss the matter, but the shift leader hit him. He alleged that he was fired the next day "because the management of defendant's corporation found that he had provoked management personnel into a fight." Plaintiff does not allege that he was pursuing some matter in the public interest and, that as a result, the defendant fired him. Instead, he merely alleges the redress of a private wrong. The trial court was correct in ruling that the complaint does not state facts upon which relief can be granted.

Plaintiff next argues that the defendant's handbook for employees constitutes an express contract prohibiting termination except for cause, and he was fired in violation of that contract.

In *St. Louis Iron Mtn. & So. Rwy. Co.* v. *Matthews*, 64 Ark. 398, 42 S.W.902 (1897), we extended the employment-at-will doctrine to allow discharge for any reason, even if a contract stated the employee could be discharged only for cause. In *Jackson* v. *Kinark Corp.*, 282 Ark. 548, 669 S.W.2d 898 (1984), we impliedly modified the rule by reversing the granting of summary judgment because the employer's handbook provided for a three-month probationary period which was at least an

implication that an employee could be dismissed for cause only. In *Gladden* v. *Arkansas Children's Hospital*, 293 Ark. 130, 728 S.W.2d 501 (1987), we clarified our position stating:

> [W]here an employee relies upon a personnel manual that contains *an express provision* against termination except for cause he may not be arbitrarily discharged in violation of such a provision. Moreover, we reject as outmoded and untenable the premise announced in *St. Louis Iron Mt. Ry. Co.* v. *Matthews*, 64 Ark. 398, 42 S.W.902 (1897), that the at will rule applies even where the employment agreement contains a provision that the employee will not be discharged except for cause, unless it is for a definite term. With those two modifications we reaffirm the at will doctrine.
>
> We recognize that these cases bear some resemblance to *Jackson* v. *Kinark Corp., supra,* where we reversed the granting of summary judgment for a fuller development of the factual issues, noting a "possible implication" from Kinark's manual that once probation was ended, an employee could be discharged only for cause. But we have considered several employment cases since *Jackson* and we realize *Jackson* may have given the impression that an implied provision would suffice. We have come to the conclusion that an implied provision against the right to discharge is not enough. . . .

*Id.* at 136, 728 S.W.2d at 505.

In *Gladden, supra*, we considered the employment manuals of two employer hospitals. Neither employee claimed she was employed for a definite length of time. The manuals contained provisions describing methods for dismissal under certain circumstances and specifying kinds of conduct which could result in summary dismissal. We held that since neither manual contained an *express* provision that discharge would be for cause only, there was no error in disposing of the cases for summary judgment.

■ Here, the plaintiff contends that one sentence in the employee's handbook provides that discharge would be for cause only. The trial judge reviewed the sentence in context and correctly held that it did not *expressly* so provide. As previously

discussed, in *Gladden, supra*, we said "an implied provision against the right to discharge is not enough." Even taken out of context, the sentence does not rise to the level required to state a cause of action. The sentence is: "We believe in working and thinking and planning to provide a stable and growing business, to give such service to our customers that we may provide maximum job security for our employees." In sum, the employment manual did not expressly provide that plaintiffs could be discharged only for cause, and therefore, the plaintiff failed to state a cause of action on this count.

■ Plaintiff additionally contends that his complaint alleges sufficient facts to state a cause of action for the tort of outrage or intentional infliction of emotional distress. We first recognized this cause of action in an employment setting in *M.B.M. Co. v. Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980). Certain principles have emerged from this and subsequent cases in which we have considered claims for the tort of outrage in employment situations. The conduct giving rise to the cause of action must be extreme and outrageous, that is, "conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* at 280, 596 S.W.2d at 687. Initially, the trial court must determine whether conduct may reasonably be regarded as so outrageous as to permit recovery. *Givens v. Hixson*, 275 Ark. 370, 361 S.W.2d 263 (1982).

> Because of the employer's right to discharge an at-will employee, a claim of outrage by an at-will employee cannot be predicated upon fact of discharge alone. However, the manner in which the discharge is accomplished or the circumstances under which it occurs may render the employer liable.

*Harris v. Arkansas Book Co.*, 287 Ark. 353, 356, 700 S.W.2d 41, 43 (1985). The type of conduct that meets the standard for an outrage cause of action must be determined on a case-by-case basis. We have taken a strict view in recognizing such a claim, especially in employment relationship situations. *Webb v. Pirelli Cable Corp. of Midwest, Inc.*, 300 Ark. 613, 780 S.W.2d 571 (1989); *Ingram v. Pirelli Cable Corp.*, 295 Ark. 154, 747 S.W.2d

103 (1988).

The extreme and outrageous character of the conduct may arise from the employer's knowledge that the employee is peculiarly susceptible to emotional distress by reason of some physical or mental peculiarity. The conduct may become outrageous if the employer continues it in the face of such knowledge, where it would not be so if he did not know. *Ingram, supra; Sterling Drug, Inc.* v. *Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988). The fact that an employer continues unjustifiable conduct over a long period of time can be an important factor weighing in favor of a finding that the employer's conduct towards an employee was outrageous. *Sterling Drug, Inc.* v. *Oxford, supra.*

Here the employer's conduct did not come close to meeting the above standards. The trial court correctly ruled that the complaint did not allege a cause of action for the tort of outrage.

Affirmed.