**Peggy Sue QUALLS, Appellant,**

v.

**HICKORY SPRINGS MANUFACTURING COMPANY, INC., Appellee.**

No. 92–2420.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1993.

Decided June 1, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied July 9, 1993.

W. Asa Hutchinson, Fort Smith, AR, argued, for appellant.

Charles W. Reynolds, Little Rock, AR, argued (Allen C. Dobson, on the brief), for appellee.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

---

BRIGHT, Senior Circuit Judge.

Peggy Sue Qualls filed suit against Hickory Springs Manufacturing Company (Hickory Springs), her employer, for wrongfully discharging her from her job. The district court granted summary judgment, dismissing her claims and determining that: (1) Qualls worked as an at-will employee; and (2) Hickory Springs' actions did not give rise to the tort of outrageous conduct.

On appeal, Qualls contends genuine issues of material fact exist on the breach of contract and outrageous tort claims. For the reasons discussed below, we reverse and remand only on the breach of contract claim.

### I.

On November 1, 1989, Hickory Springs, a manufacturer of metal products, issued a personnel policy entitled "Official Policy on a Drug–Free Workplace." The policy stated that employees were subject to drug testing upon a reasonable suspicion of illegal drug use. Under the policy, an employee could be terminated for refusing to take the test. In December 1990, Hickory Springs issued an employee handbook. The last part of the handbook contains a statement which provides that employment is terminable at any time at the will of either the employee or company. Directly below this statement is a line for an employee to sign, acknowledging the handbook has been read and the conditions set forth in the statement accepted.

Hickory Springs hired Peggy Sue Qualls on January 21, 1991, to work as a press operator on the night shift. Upon beginning work, Qualls signed the acknowledgement at the end of the handbook.

Three days later, on January 24, Hickory Springs adopted its "Rules of Conduct, Discipline and Discharge Procedure" (the Rules of Conduct). In June of 1991, Hickory Springs amended Rule 15 of the Rules of Conduct, making an employee's refusal to submit to, or otherwise interfere with the administration of, a drug or alcohol test, cause for immediate discharge. Hickory Springs posted this amended version of Rule 15 on the company bulletin board on or around July 1, 1991.

On the morning of November 21, 1991, after receiving information that Qualls and others might be using illegal drugs on the work premises, Hickory Springs' personnel manager, Bill Coleman, requested that Qualls and five other employees report to the Convenient Medical Clinic (the Clinic) to submit to a drug screen. Coleman explained to them that any employee testing positive would not be terminated, but would be placed on suspension for up to sixty days and permitted to return to work after passing a second drug test. Coleman added that any employee refusing either to submit to the test or to sign the consent form would be terminated. Qualls and the others signed the consent form and went to the Clinic.

At the Clinic, Qualls provided a urine sample, which the clinic nurse refused to accept because the temperature gauge fastened to the side of the urine specimen bottle had become dislodged. Stating that she had to leave to take her daughter to school, Qualls left the Clinic. She returned approximately an hour later and provided a second sample, which the nurse rejected because of an insufficient amount of urine in the specimen bottle. The Clinic nurse told Qualls to go home, drink some water, and then return before the Clinic closed at 8:00 p.m. After picking her daughter up from school, Qualls returned to the Clinic at approximately 3:30 p.m., at which time a nurse told her that a test specimen was no longer needed.

Qualls immediately called Hickory Springs and spoke with a supervisor, Jonie Horn, who told her Hickory Springs had terminated her for providing an "invalid urine specimen."[1]

The following day, Qualls went to Coleman and asked for her job back, stating she would

---

1. Apparently, a Clinic employee had informed Horn that Qualls had refused to take, or had tampered with, the drug test. Horn consulted with Coleman, who then discussed the situation with John Shoemaker, Vice–President of Industrial Relations. After these discussions, Coleman decided to discharge Qualls. Coleman based his decision on a belief that Qualls had intentionally rubbed off the temperature gauge and had otherwise failed to properly submit to the test at the time and place directed.

voluntarily take another drug test. Coleman denied her request.

Qualls, nevertheless, returned to the Clinic later that day and voluntarily submitted, at her own expense, to another test. She tested negative and presented the results to Hickory Springs, which refused to reconsider its decision.

Qualls then brought suit against Hickory Springs in Arkansas state court for breach of employment contract, and the tort of outrageous conduct. Hickory Springs removed the action to federal court on diversity grounds, and then moved for summary judgment. The district court granted the motion, ruling: (1) Hickory Springs' employee manuals did not contain a "for cause" discharge provision and, therefore, Qualls' status remained as an at-will employee, subject to discharge without reason; and (2) Hickory Springs did not act outrageously.

Qualls timely appealed the entry of summary judgment.

## II.

We turn first to the breach of contract claim. Qualls alleges, in effect, that Hickory Springs' drug testing policy statements contain termination "for cause" provisions, and her reliance on those provisions modified her status as an at-will employee. The parties concede that to the extent these provisions altered Qualls' at-will status, they did so only with regard to Hickory Springs' drug testing policy. In all other respects, they agree Qualls remained an at-will employee whom Hickory Springs was free to discharge for any reason.

In determining the propriety of summary judgment, this court is bound to draw all reasonable inferences in the light most favorable to the non-moving party. *Krause v. Perryman,* 827 F.2d 346, 350 (8th Cir. 1987). We are bound to review the district court's ruling *de novo. McKee v. Federal Kemper Life Assurance Co.,* 927 F.2d 326, 328 (8th Cir.1991).

The crucial question in this case is whether Rule 15 of Hickory Springs' Rules of Conduct, as well as Hickory Springs' other statements relating to Qualls' discharge, present sufficient evidence for a jury to decide she was fired in breach of an employment contract.

Rule 15 states:

Any of the following types of misconduct is considered inexcusable and may result in immediate discharge.

. . . .

15. Refusal to submit to a drug or alcohol test at time and place directed or failure to cooperate with those administering the test or delaying, tampering, diluting, or otherwise altering test specimens or attendant records thereof.

App. at 97. Relying on this rule, Hickory Springs asserts it fired Qualls, in part, because she tampered with her morning test sample. Qualls, on the other hand, denies tampering with the sample. Hickory Springs further argues that regardless of its stated reason for discharge, Qualls has no claim for breach of contract because Rule 15 creates no modification of Qualls' at-will status. In support of its position, Hickory Springs directs us to .*Mertyris v. P.A.M. Transport, Inc.,* 310 Ark. 132, 832 S.W.2d 823 (1992); *Smith v. American Greetings Corp.,* 304 Ark. 596, 804 S.W.2d 683 (1991); and *Gladden v. Arkansas Children's Hospital,* 292 Ark. 130, 728 S.W.2d 501 (1987). Qualls asserts the statements are binding, claiming *Gladden,* and *Crain Industries, Inc. v. Cass,* 305 Ark. 566, 810 S.W.2d 910 (1991) support her position that the district court erred and should be reversed.

*Gladden* was a consolidation of two separate wrongful termination actions. In the first case, a nurse, Loretta Samples, brought a breach of contract claim against a hospital, which had discharged her for absenteeism. A provision in the hospital's personnel manual stated that any of thirteen offenses, including "chronic tardiness and/or absenteeism," constituted grounds for discharge. Samples interpreted this language to mean the hospital could terminate her only for those thirteen prescribed offenses. Among other things, the manual provided that in the event of terminating an employee for absenteeism, certain steps were to be followed, including issuing written warnings. The hospital sub-

sequently agreed to reinstate her, subject to a ninety-day probationary period. Because Samples refused to accept the probation, the hospital fired her.

Affirming the trial court, the Arkansas Supreme Court ruled that the hospital's actions did not constitute a breach of the manual, noting "[t]he manual simply lists conduct which could result in termination, with no implications that those infractions alone constitute cause for discharge." *Gladden*, 728 S.W.2d at 503–04.

In the second case, Gail Gladden asserted that certain personnel regulations of her employer, a hospital, constituted an employment contract that the hospital breached in discharging her. Gladden argued for a change in the employment at-will doctrine "to allow a written contract of employment to be enforced which limits the right of an employer to discharge an employee, in the absence of a definite term of employment." *Id.* at 504.

In affirming both cases, the court stated:

Neither appellant claims she was employed for a definite length of time. Both contend the personnel manuals of the hospitals limit the right to discharge except for cause. We disagree. While the manuals contain provisions describing methods for dismissal under certain circumstances and specifying kinds of conduct that could result in summary dismissal, they do not contain provisions that an employee will not be discharged except for cause. That being so, the cases do not present the issues we defined.

*Id.* at 505. The court added this gloss on the at-will doctrine:

We do, however, believe that a modification of the at-will rule is appropriate in two respects: where an employee relies upon a personnel manual that contains *an express provision* against termination except for cause he may not be arbitrarily discharged in violation of such a provision. Moreover, we reject as outmoded and untenable the premise announced in *St. Louis Iron Mt. Ry. Co. v. Matthews*, 64 Ark. 398, 42 S.W. 902 (1897), that the at·will rule applies even where the employment agreement contains a provision that the employee will not be discharged except for cause, unless

it is for a definite term. With those two modifications we reaffirm the at will doctrine.

*Id.*

*Mertyris v. P.A.M. Transport, Inc.,* 310 Ark. 132, 832 S.W.2d 823 (1992) resembles the situation of Samples in the *Gladden* case. In *Mertyris*, a trucking firm hired Mertyris as a truck driver, giving him its Driver's Manual. There was no written contract between the parties, and Mertyris was otherwise an at-will employee. The Driver's Manual, however, did set forth seven violations that, if committed, would result in immediate termination.

Mertyris was involved in a work-related driving accident in which a highway worker was killed. Criminal manslaughter charges were brought against Mertyris, and the company subsequently dismissed him. Mertyris brought suit, alleging the Driver's Manual constituted an implied contractual promise that he would be discharged only for committing one of the seven violations. The list of violations did not include crimes such as manslaughter. The Supreme Court of Arkansas stated the list of violations subjecting one to discharge did not imply a promise not to dismiss an at-will employee for other-than-listed criminal conduct. The court said:

We recently reaffirmed the employment-at-will doctrine and noted certain exceptions to it "where there is an agreement that the employment is for a specified time, in which case firing may be only for cause, or where an employer's employment manual contains an express provision stating that the employee will only be dismissed for cause and that provision is relied on by the employee."

*Id.* at 825 (quoting *Crain Indus., Inc. v. Cass,* 305 Ark. 566, 810 S.W.2d 910, 913 (1991)).

Finally, we examine *Crain Industries, Inc. v. Cass,* 305 Ark. 566, 810 S.W.2d 910 (1991). In that case, several laid-off employees brought actions for wrongful discharge, relying on a provision in the employer's handbook which provided:

"In the event it should become necessary to reduce the number of employees in the work force, employees will be laid off on a seniority basis by department. The last employee hired would be the first to be laid off. This policy will be adhered to with one possible exception; that is, under circumstances where the efficiency of a department would be impaired by the loss of some particular employee's skill."

*Id.* at 911. The exception in the provision was not implicated, and the workers were otherwise at-will employees.

Testimony at the trial indicated the employees were aware of these seniority provisions in the handbook and expected the company to follow them. The trial court submitted the case to the jury, instructing it "to find in favor of the employees if the jury found express provisions in the handbook constituting an express agreement." *Id.* at 912. The jury found there was an express agreement, and the trial court entered judgment accordingly. Affirming the trial court, the Supreme Court of Arkansas explained:

Although the handbook in this case did not contain the provision on firing only for cause, the employees contend with respect to the *Gladden* case, "it is clear that the court envisioned a modification of the at-will doctrine in any case in which there was an express provision in the employee handbook governing the procedure at the time of termination."

The trial court did not err in presenting the matter to the jury. In the *Gladden* appeal, where we held for the employers because we could find no specific provision in the employment regulations or manual requiring dismissal to be for cause only, one of the appellants cited *Wagner v. Sperry Univac,* 458 F.Supp. 505 (E.D.Pa.1978). We distinguished the case and stated, "In *Wagner,* a reduction in force was to be governed by seniority in determining who would be laid-off and Wagner's discharge violated that provision." While the holding in the *Gladden* case is hardly a direct adoption of the *Wagner* decision, we did imply that if there were such a provision in an employment manual it would be enforceable, and that is entirely consistent with our explanation that an exception to the employment at will doctrine may arise from reliance on a promise made in an employment handbook.

*Id.* 810 S.W.2d at 913. The court applied this exception even though the seniority provisions on which the employees relied did not state the company could discharge employees only on a "for cause" basis. The provisions otherwise were clear and definite.

 In our view, Qualls' situation is most analogous to the *Crain* case. Hickory Springs fired Qualls pursuant to Rule 15 of its Rules of Conduct, which states as grounds for termination the "[r]efusal to submit to a drug [test] . . . or failure to cooperate with those administering the test or delaying, tampering, diluting, or otherwise altering test specimens. . . ." This rule, taken in conjunction with the uncontested statements of Hickory Springs' supervisors that Qualls and the others would not be fired unless they refused the test, constitutes a promise on which the employees, like in *Crain,* relied. Qualls denies refusing or otherwise interfering with the drug test. Pat Harvey, the nurse at the Clinic, gave testimony in her deposition that would support Quall's position. This testimony raises issues of fact going to the heart of the case: Did Qualls violate Rule 15?[2]

Consequently, we rule the district court erred in granting summary judgment to Hickory Springs and remand this part of the case for a trial on the merits.[3]

---

2. Harvey testified that Qualls told her that she had dropped the specimen in the commode and that temperature indicators were like someone "just rubbed it off accidentally." She said there were no actions to indicate that Qualls was not cooperating in giving the test and agreed that she would come back. (App. 184). She states that she told Jonie Horn that everything was okay and Qualls was going to come back and give another specimen. (App. 183).

3. Qualls also argued her termination violated a public policy exception to the at-will doctrine under Arkansas law. In our opinion, her claim fails because she never undertook any act to benefit the public, there is no well-established public policy to be recognized, and the exception is not applicable to the purely private interests of Qualls. *Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 743 S.W.2d 380, 385 (1988) (citing *Wagner v. City of Globe,* 150 Ariz. 82, 722 P.2d 250 (1986)).

### III.

Qualls also contends a jury should decide her claim that Hickory Springs' actions satisfy the tort of outrageous conduct. She argues Hickory Springs acted in wanton disregard of the consequences by requiring drug testing as a condition of employment and then arbitrarily refusing to give her a reasonable opportunity to complete the test.

Qualls alleges Hickory Springs terminated her employment despite her willingness to take a drug test and in the absence of evidence she intentionally tampered with, or otherwise refused to take, the drug test. Moreover, she maintains it did so despite the confusion regarding what actually happened at the Clinic, and without: (1) questioning or permitting her to explain what happened; (2) giving her an opportunity to clear her name by refusing to accept a subsequent negative drug test; and (3) providing her with any educational programs, information on drug counseling, or other employee assistance as required by Hickory Springs' own policy. She notes the company allowed a fellow employee to leave the Clinic and subsequently return to take the drug test. Qualls maintains that, as a result of Hickory Springs' conduct, she has suffered severe emotional distress, nausea, nervousness, and depression.

■ Under Arkansas law, to establish a cause of action for the tort of outrage, the subject conduct "must be extreme and outrageous, that is, 'conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Smith v. American Greetings Corp.,* 304 Ark. 596, 804 S.W.2d 683, 686 (1991) (citing *M.B.M. Co., Inc. v. Counce,* 268 Ark. 269, 596 S.W.2d 681, 687 (1980)).

We note these requirements are stringently applied and difficult to overcome in employee discharge cases. For example, the Arkansas Supreme Court ruled in *Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 743 S.W.2d 380 (1988) that a systematic eighteen month campaign to force an employee's resignation did not give rise to the tort of outrage. In *Tandy Corp. v. Bone,* 283 Ark. 399, 678 S.W.2d 312 (1984), the court ruled the tort did exist where employee suspected of stealing was interrogated regularly, threatened with arrest, and denied prescription medication. And in *Webb v. HCA Health Services of Midwest, Inc.,* 300 Ark. 613, 780 S.W.2d 571 (1989), a hospital's termination of an employee who refused to falsify Medicaid information did not rise to the tort of outrage.

■ In our opinion and reviewing the facts in the light most favorable to her, Qualls fails to demonstrate that Hickory Springs' conduct is so outrageous as to be actionable under Arkansas law. We therefore affirm the district court's grant of summary judgment on Qualls' tort of outrage claim.

AFFIRMED IN PART, REVERSED IN PART.