The Honorable Mark Alan Smith State Representative 506 North West Avenue El Dorado, AR 71730
Dear Representative Smith:
I am writing in response to your request for my opinion on the following question:
 Is it permissible by Arkansas state law to conduct breath alcohol tests on site for Nepco employees working at the Panda Power project?
You report that Nepco is a contractor "building the huge merchant power plant here for Panda." One of your constituents, a registered nurse working for Nepco and certified as a breath alcohol technician, has reportedly been asked "to conduct random, post-accident, and reasonable cause breath alcohol tests at the job site." She is concerned about the legality of this practice, particularly in light of the fact that Nepco Safety Department literature left by a previous nurse purports to summarize the law and prohibits on-site testing.
RESPONSE
I must initially note that your question as posed appears to seek private legal advice on behalf of Nepco — a task I am statutorily forbidden to undertake. A.C.A. § 25-16-701. However, to the extent your question implicates the construction of Arkansas statutes, I can and will set forth the general contours of the law on the subject of on-site alcohol testing by private employers. Accordingly, please understand that I do not offer and Nepco should not interpret the following discussion as in any sense intended to provide counsel regarding what conduct might be appropriate in this particular instance. I can only advise Nepco to seek private counsel for guidance regarding the application to it of the general principles set forth below.
Subject to the foregoing proviso, I believe that a private employer that has not entered into a contract expressly barring on-site alcohol testing might legally adopt a policy of the sort referenced in your request. However, if the employer wishes to realize the workers' compensation insurance rate benefits referenced at A.C.A. § 11-14-112 (Supp. 2001), I believe it must observe the restrictions on testing set forth at A.C.A. § 11-14-101 et seq. (Supp. 2001) and in Workers' Compensation Commission Rule 36, including the proscription against a covered employer's randomly testing for alcohol, as opposed to drug, use unless the randomly tested employee occupies a "safety-sensitive" position. See discussion infra.
For purposes of the ensuing discussion, I will assume that your question involves workers who, in accordance with what I take to be construction-industry custom, are "at-will" employees hired for an indefinite term and not subject to a written employment agreement. InPalmer v. Council on Economic Education, 244 Ark. 461, 468-69,40 S.W.3d 784 (2001), the Arkansas Supreme Court summarized the law regarding such employment as follows:
 Our well-established rule is that when an employee's employment is for an indefinite term, either party may terminate the relationship without cause or at-will. Sterling Drug, Inc. v. Oxford, 294 Ark. 239, 743 S.W.2d 380 (1988). We modified the employment-at-will doctrine to provide that where an at-will employee (one employed for an indefinite term) relies on a personnel manual or employment agreement that expressly states that he or she cannot be discharged except for cause, the employee may not be arbitrarily discharged in violation of such a provision. Id.
In Sterling, supra, we stated:
 [W]e have no hesitancy in concluding that Arkansas law would recognize at least four exceptions to the at-will doctrine, excluding implied contracts and estoppel. These are: (1) cases in which the employee is discharged for refusing to violate a criminal statute; (2) cases in which the employee is discharged for exercising a statutory right; (3) cases in which the employee is discharged for complying with a statutory duty; and (4) cases in which employees are discharged in violation of the general public policy of the state.[1]
Id.
As the Arkansas Court of Appeals recently noted in Hice v. City of FortSmith, 72 Ark. App. 410, 412, 58 S.W.3d 870 (2001): "An at-will employee can be fired for any reason, no reason, or even a morally wrong reason.Smith v. American Greetings Corp., 304 Ark. 596, 804 S.W.2d 683 (1991)."
In my opinion, a private employer, not being subject to the constitutional proscriptions against unreasonable state searches and seizures, see U.S. Const. amend. 4 and Ark. Const. art. 2, § 15, is generally free to negotiate any drug-monitoring conditions it cares to with its employees. Moreover, given the presumed at-will nature of the employment, I believe a private employer might initiate a program of alcohol breath testing applicable even to its current employees unless some binding contractual provision expressly dictated otherwise.
Having offered this conclusion, I should note that chapter 14 of title 11 of the Arkansas Code (Supp. 2001) (the "Act"), which outlines a voluntary program for drug-free workplaces that, if adopted, can trigger a discount in a covered employer's workers' compensation insurance premiums, conditions eligibility for the discount upon avoiding any random testing for alcohol of employees who occupy positions that are not "safety-sensitive." Section 11-14-101 of the Act, as amended by Act 1757 of 2001, sets forth as follows the legislative intent in establishing the program:
 (a) It is the intent of the General Assembly to promote drug-free workplaces in order that employers in this state may be afforded the opportunity to maximize their levels of productivity, enhance their competitive positions in the marketplace, and reach their desired levels of success without experiencing the costs, delays, and tragedies associated with work-related accidents resulting from drug or alcohol abuse by employees. It is further the intent of the General Assembly that drug and alcohol abuse be discouraged and that employees who choose to engage in drug or alcohol abuse face the risk of unemployment and the forfeiture of workers' compensation benefits.
 (b)(1)(A) If an employer implements a drug-free workplace program in accordance with this chapter that includes notice, education, and procedural requirements for testing for drugs and alcohol pursuant to rules developed by the Workers' Health and Safety Division of the Workers' Compensation Commission, the covered employer may require the employee to submit to a test for the presence of drugs or alcohol, and if a drug or alcohol is found to be present in the employee's system at a level prescribed by statute or by rule adopted pursuant to this chapter, the employee may be terminated and may be precluded from workers' compensation medical and indemnity benefits.
 (B) However, a drug-free workplace program must require the covered employer to notify all employees that it is a condition of employment for an employee to refrain from reporting to work or working with the presence of drugs or alcohol in the employee's body, and if an injured employee refuses to submit to a test for drugs or alcohol, the employee may be precluded from workers' compensation medical and indemnity benefits.
 (2) In the event of termination, an employee shall be entitled to contest the test results before the Department of Labor.
As reflected in this statute, the Act, which was enacted pursuant to Act 1552 of 1999, is designed to encourage employers to implement drug-testing procedures in the workplace, offering as an incentive reductions in premiums for workers' compensation insurance. See A.C.A. §11-14-112.
Subsection 11-14-102(3) of the Act defines a "covered employer" as follows:
 "Covered employer" means a person or entity that employs a person, is covered by the Workers' Compensation Law, § 11-9-101 et seq., maintains a drug free workplace pursuant to this chapter, and includes on the posting required by § 11-14-105 a specific statement that the policy is being implemented pursuant to the provisions of this chapter. This chapter shall have no effect on employers who do not meet this definition.
Subsection 11-14-104(a) of the Act provides in pertinent part:
 A covered employer may test a job applicant for alcohol or for any drug described in § 11-14-102. Provided, for public employees such testing shall be limited to the extent permitted by the Arkansas Constitution and the United States Constitution. A covered employer may test an employee for any drug and at any time as set out in § 11-14-106. An employee who is not in a safety-sensitive position may be tested for alcohol only when the test is based upon reasonable suspicion. An employee in a safety-sensitive position may be tested for alcohol use at any occasion described in §§ 11-14-102—11-14-105, inclusive. In order to qualify as having established a drug-free work-place program which affords a covered employer the ability to qualify for the discounts provided under § 11-14-112, all drug or alcohol testing conducted by covered employers shall be in conformity with the standards and procedures established in this chapter and all applicable rules adopted pursuant to this chapter. If a covered employer fails to maintain a drug-free workplace program in accordance with the standards and procedures established in this section and in applicable rules, the covered employers shall not be eligible for discounts under § 11-14-112.
(Emphases added.) Section 11-14-102 contains the following definitions pertinent to the highlighted sentence in the above passage:
* * *
 (15) "Reasonable-suspicion drug testing" means drug or alcohol testing based on a belief that an employee is using or has used drugs or alcohol in violation of the covered employer's policy drawn from specific objective and articulable facts and reasonable inferences drawn from those facts in light of experience. . . .
 (16) "Safety-sensitive position" means a position involving a safety-sensitive function pursuant to regulations governing drug or alcohol testing adopted by the Department of Transportation. For drug-free workplaces, the director is authorized to promulgate rules expanding the scope of "safety-sensitive position" to cases where impairment may present a clear and present risk to co-workers or other persons. . . .
Although a covered employer is required to conduct both drug and alcohol testing under the circumstances set forth at A.C.A. § 11-14-106, which include "post-accident" and "reasonable suspicion" situations, A.C.A. §11-14-104(a) makes clear that a covered employer may not randomly test for alcohol unless the employee tested is in a "safety-sensitive" position. In accordance with this distinction, Arkansas Workers' Compensation Commission Rule 36(V.) provides in pertinent part:
 A. This rule does not preclude an employer from conducting any lawful testing, including random testing, of employees for drugs or alcohol that is in addition to the minimum testing required under this rule.
 B. An employee who is not in a safety-sensitive position may be tested for alcohol only when the test is based upon reasonable suspicion.
In light of the foregoing, I believe a private employer would forfeit what might otherwise be its eligibility for a discount in workers' compensation insurance premiums if it were to adopt a policy of conducting random alcohol breath tests on all employees at the jobsite, including those who did not occupy safety-sensitive positions.
Specifically with respect to the authorized location of and conditions under which a covered employer may conduct alcohol breath testing, A.C.A. § 11-14-102 provides in pertinent part:
* * *
 (18) "Alcohol" has the same meaning in this chapter as when used in the federal regulations describing the procedures used for the testing of alcohol by programs operating pursuant to the authority of the Department of Transportation, currently compiled at 49 C.F.R. Part 40; and
 (19) "Alcohol test" means an analysis of breath or blood or any other analysis which determines the presence and level or absence of alcohol as authorized by the Department of Transportation in its rules and guidelines concerning alcohol testing and drug testing.
The applicable federal regulations expressly authorize the employer to designate a qualified breath alcohol technician ("BAT") or screening test technician ("STT") to conduct testing at a suitable "alcohol-testing site." 49 C.F.R. § 40.3. The regulations further authorize a BAT to conduct both screening and confirmation tests. 49 C.F.R. § 40.211. In my opinion, so long as an on-site facility meets the conditions to qualify as an alcohol testing site, see 49 C.F.R. §§ 40.221 and 40.223, and the person conducting the test in fact qualifies as either a BAT or an SST,see 49 C.F.R. § 40.213, a covered employer may always conduct such tests on-site following an accident or for reasonable cause. Given these same assumptions, I further believe a covered employer may randomly conduct on-site testing of employees holding safety-sensitive positions. As noted above, I am neither authorized nor equipped to opine whether Nepco has met these conditions.
Finally, I intend nothing in the foregoing to suggest that a private contractor retaining at-will employees is prohibited by law from randomly testing its workers for alcohol. In my opinion, the Act does not more than establish that an employer conducting such tests will be ineligible to receive the premium discount authorized by A.C.A. § 11-14-112. Under standard principles of contract law, I believe the private employer would nevertheless remain free to impose any testing procedures it might choose as a condition of continued employment. See Hice, supra (holding that even a public at-will employee forced to submit a urine sample without reasonable suspicion in alleged contravention of personnel policy handbook could be summarily fired when the sample tested positive).
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] In Sterling, the Arkansas Supreme Court held that the public-policy exception to the employment at-will doctrine "was not meant to protect merely private or proprietary rights." 294 Ark. at 249.