Cite as 2026 Ark. App. 42

# ARKANSAS COURT OF APPEALS
## DIVISION IV
No. CV-24-549

| | | |
|---|---|---|
| ORA STEVENS | | Opinion Delivered January 21, 2026 |
| | APPELLANT | |
| | | APPEAL FROM THE LEE COUNTY CIRCUIT COURT |
| V. | | [NO. 39CV-22-100] |
| RENITA DANLEY | | HONORABLE E. DION WILSON, |
| | APPELLEE | JUDGE |
| | | REVERSED AND DISMISSED WITH PREJUDICE |

**CINDY GRACE THYER, Judge**

Appellant Ora Stevens appeals a Lee County Circuit Court order denying her motion to dismiss and to set aside a default judgment rendered against her individually and in favor of appellee Renita Danley. On appeal, she challenges the order, arguing that the default judgment was void because (1) she was not properly and timely served, (2) the summons was deficient, and (3) the complaint failed to state a claim from which relief could be granted. Finding that the complaint fails to state a cause of action, we reverse and dismiss Danley's complaint with prejudice.

This case arises out of Danley's claim of wrongful termination against the Lee County Cooperative Clinic (the Clinic) and Stevens, "as its Chief Executive Officer." In her complaint, Danley alleged the following facts:

In April 2018, Danley served as the finance director for the Clinic and, at the time of her termination, had served in that position for approximately one year. During that time, Stevens was the Clinic's chief executive officer.

On Friday, April 13, 2018, Stevens informed Danley that she was being moved to a new position and directed her to leave and not return until Tuesday, April 17. Danley was told to leave her keys and was escorted away from her work site and the Clinic's premises. When she returned on April 17, Stevens instructed her to contact the Clinic's human resources department where she was told to leave and return the following week.

Danley returned on April 25 and met with Stevens. At that meeting, Danley requested written documentation regarding the reason she was sent home. Stevens denied her request. Danley was again sent home for another five days.

On April 28, Danley initiated a grievance pursuant to the policy and procedures adopted by the Clinic's board of directors. Danley's grievance related to her removal from her finance position without explanation. In her grievance, she claimed that her removal could require her to use personal time to account for the lack of hours worked at the Clinic.

Danley also requested a meeting with the personnel committee. During that meeting, which took place on May 3, the committee "dispensed with all its guarantees of due process" as stated in its employee handbook. Although the committee indicated it would provide a written response to her grievance, it failed to do so, violating its policy and procedures.

On May 17, Stevens unexpectedly called for a meeting with Danley and the Clinic's lawyer, Roy Lewellen.[1] Lewellen questioned Danley extensively regarding the "budget" and other matters pertaining to Danley's duties in the finance department. At the meeting, Danley again requested documentation regarding her removal from the finance department. Her stated purpose was to understand the problems and issues so that she could perform her new finance duties without further jeopardizing her employment. Her request for information pertained to the same matters pending before the personnel committee. Instead, Stevens terminated Danley during the meeting for insubordination due to her purported refusal to answer questions. Danley alleged she was terminated without first being given an explanation regarding her removal.

That same day, Danley was provided written notification of her termination. The notice stated that Danley had been disrespectful to her coworkers and supervisors. The notice also stated that Danley had abruptly left the meeting with Stevens and Lewellen and slammed the door.

The next day, on May 18, Danley filed a wrongful-termination suit against both the Clinic and Stevens, "as Chief Executive Officer" of the Clinic, setting forth the allegations outlined above. In the complaint, Danley claimed that her termination was not the result of insubordination as asserted in the termination letter but instead that it was the culmination

---

[1]Stevens, in her opening brief, identified Lewellen as the Clinic's former lawyer; although he was not identified as such in any of the pleadings, Danley has not disputed Steven's characterization of his role.

of a coordinated effort between Stevens and "others" to create a pretextual reason for terminating her. She alleged that the Clinic's board of directors had adopted an employee handbook and that her termination did not comply with the policies and procedures outlined in the handbook. She claimed that Stevens, by her actions, had usurped the authority of the personnel committee to decide the matters before it and had invalidated the grievance process. Danley further claimed to have utilized the grievance procedures to make her grievance known and to have relied on those procedures to her detriment. She further alleged that the Clinic is a corporation providing health care services; that it receives state and federal funds for its operational purposes; and that its receipt of those funds is conditioned upon its compliance with various state and federal statutes and regulations. Finally, Danley claimed to have performed her duties in compliance with all state and federal regulations and that her termination was in violation of public policy.

Stevens retired from the Clinic in June 2018.

On October 5, 2021, Danley nonsuited her claims against Stevens and the Clinic.

One year later, on October 5, 2022, Danley refiled the complaint against the Clinic and against Stevens, "as Chief Executive Officer" of the Clinic. Once again, the complaint alleged that Stevens was a resident and citizen of Lee County and was the duly acting chief executive officer of the Clinic. Upon the filing of the complaint, the Lee County Circuit Clerk issued two summonses—one to the Lee County Cooperative Clinic and one to Ora Stevens—and both listed the defendants' address as 530 West Atkins in Marianna, Arkansas.

On February 2, 2023, Danley filed a motion for extension of time to effectuate service. In the motion, Danley stated that she had "been unable to serve the defendants" and requested an additional sixty days to complete service. She noted that the complaint was "with the process server for service but defendants have not been served." The court signed the order prepared by Danley's counsel on February 6. The order stated, "From statements of counsel and other matters, things, and proof before the Court, the Court does find that for good cause shown, the time for serving the defendants shall be extended an additional sixty (60) days."

On March 21, Timothy McMahon, a process server, filed proof of service, stating that service of the summons and complaint on Ora Stevens was completed on February 8. The proof of service stated that the summons was for "Lee County Coop. Clinic Ora Stevens." As for the type of service, it stated that McMahon had delivered the summons and complaint to "Ora Stevens (name), an agent authorized by appointment or by law to receive service of summons on behalf of Lee County Coop. Clinic (Defendant) on 2/8/23 (date)." It did not, however, state that the summons had been personally delivered to Stevens as an individual—another option on the proof-of-service form.

Neither the Clinic nor Stevens answered the complaint.

On April 4, 2023, Danley moved for default judgment, alleging that Stevens had been served with the summons and complaint on February 8; that more than thirty days had passed since service had been effectuated; but that Stevens had failed to file an answer or

5

otherwise defend as required by the rules. One week later, Danley sought to once again nonsuit her claims against the Clinic.

On April 12, the circuit court granted Danley's motion for a default judgment against Stevens and her motion to nonsuit her complaint against the Clinic. A hearing on damages was set for September 8, after which the court awarded Danley $126,833.28 in damages from "Ora Stevens." A judgment in that amount was filed that same day.

On October 16, Danley filed a writ of garnishment on Stevens's current employer, the City of Marianna, and provided notice of same to Stevens.[2] The City of Marianna responded by letter dated November 13 that Stevens was paid biweekly and that it would begin withholding funds for the garnishment from the next payroll on November 21. A garnishment order was filed on February 1, 2024, ordering the City of Marianna to withhold 25 percent of Stevens's net pay until the judgment is paid in full.

On the afternoon of February 26, Stevens filed a motion to stay enforcement of default judgment. In the motion and brief in support, Stevens argued that the default judgment entered against her was null and void and that its enforcement should be stayed. In arguing that the default judgment was void, Stevens claimed that she had not been properly served, that the complaint had not stated a cause of action as required by Rule 12(b)(6), and that the summons was defective because it did not list her correct address.

---

[2]While there is no evidence of this in the record, the parties do not dispute that Stevens became mayor of Marianna in January 2023.

Finally, Stevens indicated that a separate motion to set aside the default judgment and to dismiss was being simultaneously filed with the motion to stay. That motion seeking both to set aside the default judgment and to dismiss the complaint was not filed, however, until later that same day.

The later-filed motion and corresponding brief in support further expounded on Stevens's claim that the default judgment was void. In them, Stevens again argued that Danley's complaint had failed to state a cause of action for wrongful discharge against Stevens. First, she argued that she had been sued in her official, not individual, capacity and that she was not Danley's employer—the Clinic was; thus, the complaint failed to state a cause of action for wrongful termination against her individually. Second, Stevens argued that the complaint failed to identify what well-established public policy, statute, or regulation her termination violated. Finally, Stevens argued that Danley had failed to allege how the grievance process was similar to a "for cause" provision in an employment handbook thereby shielding her from termination or reassignment. As a result, she argued that the default judgment should be set aside and the complaint dismissed for failure to state a cause of action.

Stevens also argued that the default judgment should be set aside because (1) she was not properly served; (2) Danley failed to show good cause for the extension of time to effectuate service; (3) the proof of service was not sworn; and (4) the address of the summons was incorrect. As for service, she noted that the return did not indicate what was actually served on her, and it stated it was served on her on behalf on the Clinic, not on her

individually; as such, service was not proper. Additionally, in the affidavit she filed with the motion, Stevens denied she had ever been served with a copy of the summons and complaint. She further argued that Danley was required to show good cause to obtain an extension, and the motion for extension of time did not provide one. More specifically, she argued that the motion did not detail the efforts made to effect service prior to the request for an extension and maintained that Danley had failed to explain why she had not contacted Stevens's counsel from the prior litigation between the parties to see if service could be waived or accepted. Stevens's affidavit also claimed that she had never evaded, or attempted to evade, service of process. She further asserted the summons was invalid because the proof of service was not sworn. Last, Stevens argued that the address listed on the summons was incorrect. She claimed that the address listed on the summons was the address of the Clinic, that she never lived at that address, and that she had not worked at that location since her retirement in June 2018. More specifically, her affidavit provided:

> The Summons lists my address as 530 West Atkins, Marianna, AR 72360. This was my work address when I worked at the Lee County Cooperative Clinic. I have not worked at the Clinic since my retirement in June 2018.

Danley responded on March 14, disputing each of Stevens's claims. In support of her claim that Stevens was personally served, Danley filed a supplemental affidavit of service in which the process server stated that he personally delivered the summons and complaint to Stevens at 45 W. Mississippi in Marianna. Danley further argued that Stevens had waived her objections by filing her motion to stay enforcement of the default judgment two hours before filing her motion to dismiss. Danley claimed the motion to stay acted as an appearance

8

and request for affirmative relief, resulting in the waiver of Stevens's Arkansas Rule of Civil Procedure 12(b) defenses.

Stevens replied three days later, reiterating her initial claims. She further argued that she could have not been served at 45 W. Mississippi as indicated by the process server because she did not work there, nor was she physically present at that location on that date.[3] Finally, Stevens argued that she had not waived her Rule 12 objections, arguing that she had not requested affirmative relief and that her filing of a motion to stay enforcement of the default judgment was not inconsistent with her assertions in the motions to dismiss and set aside. She further asserted that, in any event, she had also raised those defenses in her motion to stay.

After a hearing on the outstanding motions on March 19, 2024, the court entered the following order:

1. The Court finds that the plaintiff has stated a cause of action against the defendant, Ora Stevens, as Chief Executive Office[r] of the Lee County Clinic for wrongful termination.

2. The Court finds that the plaintiff has served Ora Stevens as Chief Executive Office[r] of the Lee County Cooperative Clinic pursuant to the dictates of Arkansas Rule of Civil Procedure 4.

3. The Court also finds that the defendant, Ora Stevens, as Chief Executive Office[r] of the Lee County Cooperative Clinic, in its pleading filed with the court titled Motion and Brief in Support of Motion to Stay Enforcement of Default Judgment did request affirmative relief and submit herself to the jurisdiction of the Court.

---

[3]Stevens states in her brief that 45 W. Mississippi is an address once associated with the Marianna City Hall but claims that city hall had not been located at that address for several years. We note that this information was not included in her affidavit, nor is there any other evidence of this in the record.

4. The Court also finds that the Order of Extension of Time to serve the complaint provided a good cause to Judge Chris Morledge, who extended the time for service based upon the pleadings before him.

5. The Court also finds that the defendant, Ora Stevens, did not raise the issue of lack of good cause to extend service time of the complaint in her first pleading filed with the Court, and thus the issue of no good cause to extend service time of the complaint was waived by the defendant submitting to the jurisdiction of the court by requesting affirmative relief.

6. The Court finds that the summons was properly served on separate defendant, Ora Stevens, as Chief Executive Officer of the Lee Cooperative Clinic, pursuant to Rule 4 through the process server and met all of the requirements of Arkansas Rule of Procedure 4, as attested to by the Amended Affidavit of Service. The Court also finds that the summons was not defective based on an incorrect address.

7. The Court finds that the summons that was issued and the default judgment that was granted shall be according to the pleadings filed and the judgment should be reflected against Ora Stevens, as Chief Executive Officer of the Lee County Cooperative Clinic.

8. If the Court has failed to address any issues that were raised by the defendant, Ora Steves, as Chief Executive Office[r] of the Lee County Cooperative Clinic, please notify the Court within five (5) days of the entry of this Order.

This timely appeal followed.[4]

On appeal, Stevens challenges the circuit court's order, arguing that the underlying judgment was void because (1) she was not properly and timely served, (2) the summons was

---

[4]After the court entered its order and before the notice of appeal was filed, Stevens filed a motion to clarify the court's order. She noted that the circuit court, in its order, only discussed Danley's claims against her as chief executive officer of the Clinic and asked the circuit court to clarify whether it would uphold the judgment and writ of garnishment issued against her in her individual capacity. The court never ruled on her motion.

deficient, and (3) the complaint failed to state a claim from which relief could be granted. Thus, it should have been set aside and the complaint dismissed.

The standard of review for an order denying a motion to set aside default judgment depends on the grounds on which the appellant claims the default judgment should be set aside. *Steward v. Kuettel*, 2014 Ark. 499, 450 S.W.3d 672. When the appellant claims that the default judgment is void, our review is de novo, and we give no deference to the circuit court's ruling. *Id.* In all other cases, we review an order denying a motion to set aside default judgment for abuse of discretion. *Id.*

Stevens's first two arguments fall under our de novo standard of review. Service of a proper summons must be perfected within 120 days after the complaint is filed, or the court fails to obtain jurisdiction, rendering any judgment void. *See Jones v. Douglas*, 2016 Ark. 166, at 5, 489 S.W.3d 648, 651; *McDonald v. Ft. Smith & W.R. Co.*, 105 Ark. 5, 8–9, 150 S.W. 135, 136 (1912) ("A judgment rendered by a court without jurisdiction is void; and, to have such jurisdiction, the court must have jurisdiction both over the subject-matter of the suit and the parties thereto."). However, "erroneous judgments are not necessarily void judgments. If the court in which the erroneous judgment is entered has jurisdiction of the subject matter and the parties thereto, such judgment is voidable but not void." *Fed. Nat'l Mortg. Ass'n v. Taylor*, 2015 Ark. 78, at 7, 455 S.W.3d 811, 815. Since it does not implicate the court's jurisdiction, Stevens's third argument is reviewed under an abuse-of-discretion standard.

11

We agree with Stevens that the default judgment should have been set side and the complaint dismissed because, even assuming the summons was sufficient and service was proper, Danley's complaint failed to state a cause of action for wrongful termination against Stevens, in any capacity. Thus, the circuit court abused its discretion in failing to do so.

A pleading must contain, inter alia, a statement of facts, in ordinary and concise language, showing that the pleader is entitled to relief. Ark. R. Civ. P. 8(a). A pleading is deficient if it fails to set forth facts pertaining to an essential element of the cause of action. *Wiseman v. Batchelor*, 315 Ark. 85, 864 S.W.2d 248 (1993). Arkansas is a state that requires fact pleading, and a pleading that sets forth mere conclusions is not sufficient under the Arkansas Rules of Civil Procedure. *Mann v. Orrell*, 322 Ark. 701, 912 S.W.2d 1 (1995). Nevertheless, pleadings are to be liberally construed and are sufficient if they advise a party of its obligations and allege a breach of them. *Thomas v. Pierce*, 87 Ark. App. 26, 184 S.W.3d 489 (2004).

In reviewing a circuit court's decision on a motion to dismiss under Arkansas Rule of Civil Procedure 12(b)(6), this court treats the facts alleged in the complaint as true and views them in the light most favorable to the plaintiff. *Parnell v. FanDuel, Inc.*, 2019 Ark. 412, at 2, 591 S.W.3d 315, 317. In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.* at 3, 591 S.W.3d at 318. We look only to the allegations in the complaint and not to matters outside the complaint. *Henson v. Cradduck*, 2020 Ark. 24, at 4, 593 S.W.3d 10, 14. We treat only the facts alleged in the complaint as true but not a

12

plaintiff's theories, speculation, or statutory interpretation. *Id.* The standard of review for the grant of a motion to dismiss is whether the circuit court abused its discretion. *Id.* We consider questions of law de novo. *Brown v. Towell*, 2021 Ark. 60, at 6, 619 S.W.3d 17, 20.

In Arkansas, an employer may terminate an employee for good cause, bad cause, or no reason at all under the employment-at-will doctrine. *Hice v. City of Fort Smith*, 75 Ark. App. 410, 58 S.W.3d 870 (2001). As a result, Arkansas's at-will employment doctrine generally bars an employee from recovering against an employer that has ended the employment relationship. *Cottrell v. Cottrell*, 332 Ark. 352, 965 S.W.2d 129 (1998). Our supreme court has, however, recognized two exceptions to the at-will doctrine. The first is based on an "implied contract" theory; the second is rooted in public policy. *McCabe v. Wal-Mart Assocs., Inc.*, 2019 Ark. App. 566, 591 S.W.3d 335.

The implied-contract exception permits a lawsuit based on the theory that an employer who promises an employee that he or she will not be discharged without cause must honor that promise. *Gladden v. Ark. Children's Hosp.*, 292 Ark. 130, 728 S.W.2d 501 (1987). The employer must have expressly made such an agreement before this narrow exception will apply. *Id.* An implied provision against the right to discharge will not be sufficient to invoke the exception to the at-will doctrine. *Hice, supra; see also Gladden, supra; St. Edward Mercy Med. Ctr. v. Ellison*, 58 Ark. App. 100, 946 S.W.2d 726 (1997). This narrow exception must essentially reflect (in some manner) a guarantee of job security in an employer's personnel manual. *See Crain Indus., Inc. v. Cass*, 305 Ark. 566, 568, 810 S.W.2d 910, 911 (1991) (handbook statement that "in the event it should become necessary to

13

reduce the number of employees in the workplace, employees will be laid off on a seniority basis" was express provision against wrongful discharge that could be relied on by employee). *But see Smith v. Am. Greetings Corp.*, 304 Ark. 596, 600, 601, 804 S.W.2d 683, 685, 686 (1991) (handbook statement that "[w]e believe in working and thinking and planning to provide a stable and growing business, to give such service to our customers that we may provide maximum job security for our employees" was not an express provision that defeated the at-will doctrine). Employer policies that address grievance procedures, drug tests, and progressive-disciplinary actions generally do not meet this exception. *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 69 S.W.3d 393 (2002) (grievance procedure); *Hice*, *supra* (drug testing); *St. Edward Mercy Med. Ctr.*, *supra* (progressive-discipline policy).

Here, Danley alleged that the Clinic had grievance policies and procedures in place that were adopted by the Clinic's board of directors; that she initiated a grievance pursuant to the grievance policies; and that the personnel committee dispensed with all its guarantees of due process as stated in its employee handbook and failed to provide her a written response to her grievance as required by the grievance policy. The complaint further alleged that her termination did not comply with the policies and procedures outlined in the employee handbook and that Stevens usurped the authority of the personnel committee and invalidated the grievance process. However, Danley failed to quote in her complaint the express "for-cause" provisions of the handbook or the grievance procedure that allegedly exempted her from being considered an at-will employee, nor did she attach copies of any such documents to her complaint. Because Danley is required to prove an express guarantee

14

that she could not be discharged without good cause for this limited exception to apply and because she has failed to quote, incorporate, or otherwise provide the language from the employee handbook or grievance procedures that would give rise to an express guarantee, her claim must fail on its face. Simply put, even when liberally construed, the pleadings fail to state a cause of action for wrongful termination against Stevens in either her individual or official capacity.

The second exception—the public-policy exception—applies when the reason for the discharge is "so repugnant to the general good as to deserve the label 'against public policy.'" *Marine Servs. Unlimited, Inc. v. Rakes*, 323 Ark. 757, 764, 918 S.W.2d 132, 135 (1996) (citing *Smith*, 304 Ark. 596, 804 S.W.2d 683). It, too, is "a narrow bridge over the at-will moat." *McCabe*, 2019 Ark. App. 566, at 8, 591 S.W.3d at 341. This limited public-policy exception does not, however, "protect merely private or proprietary interests." *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 249, 743 S.W.2d 380, 385. When a wrongful-termination claim seeks only the redress of a private wrong, the public-policy exception does not apply. *Smith, supra.*

To invoke the public-policy exception to the at-will employment doctrine, a plaintiff must identify a public policy outlined in our statutes. *City of Highfill v. Scantlin*, 2025 Ark. App. 242, 713 S.W.3d 501; *see also Palmer v. Ark. Council on Econ. Educ.*, 344 Ark. 461, 472, 40 S.W.3d 784, 790 (2001) ("[A]n at-will employee cannot be terminated if he or she is fired in violation of a well-established public policy of the State . . . , but . . . such public policy must be outlined in our statutes.").

Here, the complaint alleges that the Clinic is a corporation providing health care services and that it receives state and federal funds for operational purposes. It further alleges that the state and federal funds are conditioned on the Clinic's compliance with various state and federal statutes and regulations. The complaint then states that Danley had performed her duties in compliance with all state and federal regulations and that her termination was against public policy. Danley, however, did not identify what state or federal statute or regulation was at issue or was violated nor did she allege that she was terminated for refusing to violate any state or federal statute or regulation; thus, she cannot demonstrate that her termination on this purported ground violates an established public policy.

Finally, Danley's claim for promissory estoppel (justifiable reliance) also falls short. Promissory estoppel applies when a plaintiff can show that (1) the defendant made a promise; (2) the defendant should have reasonably expected the plaintiff to act or refrain from acting in reliance on the promise, and the plaintiff reasonably relied on the promise to its detriment; and (3) an injustice can be avoided only by enforcing the promise. *Fairpark, LLC v. Healthcare Essentials, Inc.*, 2011 Ark. App. 146, at 12, 381 S.W.3d 852, 859. Here, Danley's employment was at will, and she provided no reasonable basis to conclude that she was promised employment for some unstated time period. Because Danley could have been discharged for any or no reason at all, she cannot recover for being terminated from her at-will job. This court has before affirmed the dismissal of a promissory-estoppel claim in the Rule 12(b)(6) context, albeit on a different set of facts. *See McCabe*, *supra*; *see also Johnson v. Blytheville Sch. Dist.*, 2017 Ark. App. 147, 516 S.W.3d 785 (affirming dismissal of promissory-

estoppel claim). There is, in other words, no "promissory-estoppel exception" to the at-will doctrine. It is not this court's role to create what would be tantamount to a new exception to the at-will doctrine—and a broad and open-ended one at that—on the record and arguments now before us.

Applying the required standard of review, we hold that the circuit court abused its discretion when it denied Stevens's motion to set aside the default judgment. The complaint, when liberally construed and deemed true, fails to state a claim for wrongful discharge against Stevens in either her individual or official capacity. For this reason, we reverse and dismiss Danley's complaint. Because Danley has nonsuited her claims once before, the dismissal shall be with prejudice pursuant to Arkansas Rule of Civil Procedure 41(b).

Reversed and dismissed with prejudice.

HARRISON and TUCKER, JJ., agree.

*Friday, Eldredge & Clark, LLP*, by: *Khayyam M. Eddings* and *Kat Hodge*, for appellant.

*Don Etherly*, for appellee.